## THE "S. C. TRYON."

1. The findings of fact which, in admiralty cases in the Circuit Court, the act of Feb. 16, 1875, c. 77 (18 Stat., pt. 3, p. 315), requires are in the nature of a special verdict, and constitute a part of the record.. The law arising thereon will therefore be determined here, although no exception thereto was taken.

2. A bill of exceptions is required to reserve for review the rulings below upon questions of law during the progress of the trial.

3. The court in this case, while refusing to dismiss the appeal, grants a motion to affirm the decree, it appearing from the record that the appeal was taken for delay.

MOTION to dismiss an appeal from the Circuit Court of the United States for the District of Maryland, with which is united a motion to affirm.

The Merchants' Steamship Company, of Charleston, South Carolina, as owner of the steamship "Falcon," filed its libel in the District Court of the United States for the District of Maryland, in a cause of collision, civil and maritime, against the schooner "S. C. Tryon," and obtained a decree. The claimants thereupon appealed to the Circuit Court, which found the following facts: —

About 4.30 P. M. on Saturday, the 8th of November, 1870, the steamer "Falcon," then owned by the libellant, being properly officered and manned, and in every way fitted for her voyage, left the port of Baltimore on a voyage to Charleston, South Carolina, with a valuable cargo of merchandise on board.

About 9.45 P. M. on said 8th of November, the said steamer was proceeding on her proper course, S. by E. $\frac{1}{4}$ E., down the Chesapeake Bay, about eight miles above Cove Point, at the rate of nine miles an hour. All of her lights required by law were properly hung, burning brightly, and visible the prescribed distances. Her second mate, a competent licensed pilot, was in charge of her, standing in the pilot-house, with the man at the wheel.

An able seaman and competent helmsman was at her wheel; a sufficient and competent crew were on duty; two other able seamen were vigilantly occupied as lookouts, stationed far forward in the bow, in the position most advantageous therefor.

About the time last mentioned both of the lookouts saw, and one of them immediately reported, a red light about one point over the port bow of the steamer.

The second mate of said steamer looked with his glasses, saw the said red light in the direction in which it had been reported, and satisfied himself that it was on board a sailing-vessel, a mile and a half or two miles off, coming up the bay with a fair wind.

The man at the wheel then also saw it. It turned out afterwards to be the red light on board of the schooner " S. C. Tryon," coming up the bay, as the second mate supposed. The night was starlight; there was a seven-knot breeze from the southward; fair for said schooner; and there was no necessity for her, then or thereafter, to change her course. If there had been no change in the course of either vessel, they would have passed each other in safety, each on the port side of the other.

As a matter of precaution, however, the helm of said steamer was immediately ported, until she fell off to S., a change of $1\frac{1}{4}$ points in her course, and causing said schooner to bear about $2\frac{1}{4}$ points over the port bow of said steamer. The second mate and lookouts of said steamer continued to watch the light of said schooner, seeing all the time only her red light, and said steamer was kept on her new course, about $1\frac{1}{4}$ points farther to the westward than her original course, until said vessels were about a mile apart; only the red light of said schooner was then visible; although no further change of course

on the part of said steamer seemed then to be necessary, as a matter of further precaution her helm was again ported a little.

When the said vessels were three or four hundred yards from each other, about to pass each other in safety, sufficiently far apart not to justify even the apprehensions of danger, the said schooner, being still to the port of said steamer, and showing only her red light, suddenly, and without any justification therefor, put her helm hard a-starboard, and exhibited to said steamer both of her side lights.

As soon as her green light was visible to those on board of said steamer, it was seen by both lookouts of said steamer, and by one of them immediately reported to the second mate of said steamer.

The helm of said steamer was thereupon immediately put hard a-port, and in a few seconds thereafter her engines were stopped; but said vessels were then so near together that there was not sufficient time to reverse said engines, and the bow of said schooner struck said steamer about midships on her port side, cutting her down to the water's edge, and damaging her so seriously that in about ten minutes she sunk, with all her cargo on board, in water six fathoms deep.

The collision was entirely the result of want of proper care, skill, and seamanship on the part of those in charge of said schooner, and the improper change in her course made in consequence thereof.

Those in charge of said steamer did all in their power to keep out of the way of said schooner to prevent said collision, and to lessen the consequences thereof.

The libellant and the petitioners, and those in whose behalf petitions have been filed, sustained damages by said collision largely exceeding the amount of the stipulation filed for said schooner.

The court found the following conclusions of law :—

It was the duty of the steamer vigilantly to watch the movements of the schooner from the time she or either of her lights was visible to those on board of said steamer, and to take proper measures to keep out of the way of said schooner.

It was the duty of the schooner not to change her course so as to baffle the efforts of the steamer to keep out of her way.

It was the duty of the steamer, even after the schooner had improperly changed her course, to do all she could to prevent a collision, and to lessen the consequences of one, if unavoidable.

The court rendered a decree in favor of the libellant, and the claimants appealed to this court.

*Mr. John H. Thomas* and *Mr. George Leiper Thomas* for the appellee, in support of the motions.

There was no opposing counsel.

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

A bill of exceptions is not necessary to give this court jurisdiction of an appeal in admiralty under the provisions of the act of Feb. 16, 1875, c. 77 (18 Stat., pt. 3, p. 315). That act expressly provides that the review here shall extend to the determination of the questions of law arising upon the record, and to such rulings of the court, excepted to at the time, as may be presented by a bill of exceptions, prepared as in actions at law. At law a bill of exceptions is only used to put into the record that which would not appear without. The findings which the statute requires must be stated by the court. These, therefore, become part of the record without any action of the parties, and errors of law arising on them need not be presented by exceptions. They are in the nature of a special verdict, as to which the inquiry is always open in the reviewing court, whether, when taken in connection with everything else that appears, it is sufficient to support the judgment.

The motion to dismiss must, therefore, be overruled, but on looking into the record we are satisfied the appeal was taken for delay. The only question presented arises on the findings of fact. From these it appears that the collision was due solely to an unjustifiable change of course by the schooner when the vessels were in close proximity, which baffled the steamer in her efforts to pass in safety. It is so well settled that a steamer is not liable for the consequences of a collision occurring in this way, that we do not deem it proper to retain the cause for further consideration.

*Motion to affirm granted.*