## THE E. B. WARD, Jr.*

### (*Circuit Court, E. D. Louisiana.* March, 1883.)

1. DEATH CAUSED BY NEGLIGENCE ON HIGH SEAS—STATUTE OF LOUISIANA.

   The statute of Louisiana, which causes a survival to next of kin of the right of action for damages for death wrongfully caused, can have no application to a case where the death was caused outside the state of Louisiana and on the

*Reported by Joseph P. Hornor, Esq , of the New Orleans bar.

high seas, and where the deceased was a subject of and domiciled in the kingdom of Sweden.

*Whitford* v. *Panama R. Co.* 23 N. Y. 465, and *Mahler* v. *Transp. Co.* 35 N. Y. 352, followed.

2. SAME—REASON OF COMMON-LAW RULE.

The reason which led the courts of common law to refuse damages to members of a family for the death of the family head, or of a family support, was because the injury which resulted from the death of a member of the state was regarded as the public injury, *i. e.*, the injury to the state itself; that the justice to be satisfied was the public justice. Therefore, only such prosecutions and actions for the death of an individual can be entertained, with such limitations as are permitted and established by that power which ordains and regulates, the infliction of public justice in the locality where the death was caused.

3. JURISDICTION OF UNITED STATES COURTS.

The power of the courts of the United States to give redress to an individual for the death of another, if the wrong was committed and the death caused upon the land or the navigable waters within the body of a county of a state, would be governed by the laws of that state; if the wrong was committed and the death caused upon the high seas and within the territory of no nation, must be determined by the statutes enacted by congress, or the treaties made by the president and the senate, which by their provisions should operate either upon courts or vessels.

4. SAME—NO RELIEF IN ABSENCE OF STATUTE OR TREATY.

Until the law-making or treaty-making power has authorized this right of action, and affixed its conditions and limitations, courts cannot decree damages to one person for the death of another upon the high seas.

In Admiralty. On exception to libel.

*John D. Rouse* and *William Grant,* for libelants.

*William S. Benedict* and *Andrew J. Murphy,* for claimants.

BILLINGS, J. This is a suit brought by the widow of Peter Peterson, deceased, the father and mother of Gustaf Leander Joussen, deceased, and the mother and sister of Erick Anderson Holm, deceased, claiming damages against the steam-ship E. B. Ward, Jr., which they have respectively suffered by the death of a husband, a son, and a son and brother, tortiously produced by a collision between the bark Henrick with the E. B. Ward, Jr., through the fault of the latter. The collision and deaths took place upon the high seas and within the territory of no nation. One of the colliding vessels, the Henrick, was a Swedish vessel, and the other, the E. B. Ward, Jr., was a vessel of the United States, the home port of which is the port of New Orleans. The damages are laid doubly: (1) As the damages suffered by and surviving from the deceased person; and (2) the damages suffered by and accruing directly to the libelants, respectively, by the death of their respective relatives. There is no allegation of loss of service after the tortious act and before death. There is also a claim

for the loss of personal effects belonging to each of the deceased relatives.

1. So far as relates to the damages suffered by the intestates, which are claimed to have survived to the libelants respectively. The statute of Louisiana stands alone, so far as I have been able to consult the modern statutes, in continuing, in case of a wrongfully-caused death to the next of kin, a right of action for damages caused to a deceased person. The statutes of all the other countries and states, so far as they have created or allowed actions arising out of the death of other persons, have been for loss or injury which the living members of the family suffered themselves by the death of the family head or family member. The statute of Louisiana (Civil Code, art. 2314) merely qualifies, or rather, so far as concerns husband, wife, children, and parents, supplants, the civil and common-law maxim, *actiones personales moriuntur cum persona.* I do not think this change in the quality of an action for damages was designed to or could affect the case of persons who as libelants were subjects of the kingdom of Sweden and there domiciled, having no relation to the state of Louisiana, and when the cause of action arose wholly outside of that state. This question would be precisely the same and must have the same answer in the courts of common law and the courts of admiralty. The operation of the statute was intended to be confined to establishing a rule of survivorship for the government of the community who constitute the state of Louisiana, and could not include a cause which did not concern its inhabitants and did not originate within its territory; and, least of all, could it give a lien upon or authorize an action against a vessel. *Whitford* v. *Panama R. Co.* 23 N. Y. 465; *Mahler* v. *Transp. Co.* 35 N. Y. 352.

2. The claim for damages suffered directly by the libelants brings up the whole question whether, in case of the death of a person tortiously caused upon the high seas, in the courts of admiralty of the United States an action may be maintained by next of kin for damages which that death wrought to them. I cannot find that the supreme court of the United States has committed itself at all upon this question. In the *Prohibition Case, Ex parte Gordon,* 104 U. S. 515, they affirm the jurisdiction,—the power of the admiralty courts to decide this question,—but they guardedly abstain from saying as to whether there could be a recovery. But the courts of common law always had the jurisdiction, and the right to recover was, nevertheless, always denied. Nor has this question been adjudicated in any

v.16,no.2—17

of the district or circuit courts. In *The Sea Gull*, decided by Chief Justice CHASE, page 145 of his Reports, and in *The City of Houston*, decided by myself, and affirmed by Judge (now Justice) WOODS, the death happened and the damage arose within the body of the county, upon waters where the statute law of a state within which those waters were situated gave the right of action. The cause of action therefore, existed by force of the territorial statute, and since it constituted a tort, and was upon navigable waters and occurred in a case of collision, the court of admiralty could enforce it in a proceeding *in rem*.

It is needless to multiply authorities when all are concurrent. But it may be stated that both in the common law and in the admiralty, in the courts of England and the United States, except in cases affected by statutes, it has been uniformly held that the death of a person could not constitute a cause for a civil action.

No stronger case could be put than that of *Ins. Co. v. Brame*, 95 U. S. 759. That case arose in Louisiana. The plaintiffs in error had insured McElroy's life. Brame tortiously killed him, whereby the plaintiffs were compelled to pay, and did pay, the amount insured upon his life, and under the law of Louisiana, which provides that (Civil Code, art. 2315) "every act whatever of man that causes damage to another, obliges him by whose fault it happens to repair it," brought an action for damages, and yet the court rejected the plaintiff's demand to be indemnified. The ground upon which the decision is put is that the damages of the insurance company were too remote to be allowed. If the supreme court, in construing such a statute, adopt, not the conclusion of the common law, but the reason upon which that conclusion is based, it must follow that the force of the reason would be the same, and the conclusion the same, in a case coming before it from courts of admiralty. It is equally true that among the Saxons and the tribes of Germany and at Rome, such an action was, to a certain extent, permitted. Ruth. Inst. Nat. Law, book 1, c. 17, § 9; Grotius, Lit. 2, c. 17; and Puff. Law of Nat. book 3, c. 1, § 7. Puffendorf, perhaps, lays down the limits within which the early law permitted an individual action or suit more clearly than any other writer. He says:

"The unjust slayer was obliged to defray the charge of physicians and chirurgeons, and to give to those persons whom the deceased was, by a full and perfect duty, bound to maintain, as wife, children, and parents, so much as the hope of their maintenance shall be valued at."

The doctrine of England and the United States, in refusing all private redress, seems to have been established at the early inception of constitutional government in that kingdom. So early as the fourth of James I., which was in 1607, we find it held by TANFIELD, J.:

"If a man beat the servant of J. S., so that he dies of that battery, the master shall not have an action against the other for the battery and loss of service, because the servant dying of the extremity of the battery it is now become an offense to the crown, and drowns the particular offense and private wrong offered to the master before, and his action is thereby lost." *Higgins* v. *Butcher*, Yelv. 90.

In *Baker* v. *Bolton*, 1 Camp. 493, which was an action by a husband for damages for the death of a wife, Lord ELLENBOROUGH stated the law to be that in a civil court the death of a human being cannot be complained of as an injury. Baron COMYNS, in his Digest, under the head of "Action on the Case," after enumerating cases where the action will lie, gives the cases of "a man killing the servant of another," and "the battery of a wife, of which she died," as instances where the action will not lie under the subdivision. "For an act of another nature," which I understand to mean for an act for which redress is public and not private. If we can arrive at the reason of this doctrine—this refusal of the law to entertain this sort of action—we shall derive much aid in our inquiry.

It has been suggested by some writers that the reason of the doctrine was that a human life transcended all moneyed value. But Puffendorf makes a distinction which shows that that could not have been the only reason, for he says the reparation is not for the value of a life, but merely for the value of the interest which those dependent upon the deceased had in the support derived from them. Other writers urge that it sprung entirely from the system of feudal law, whereby, since in case of felony the goods and estate of the felon became forfeited to the crown, there would be nothing remaining out of which to satisfy any private demand. But, I think, while the ground for the doctrine was in part both these, the principal ground was that the life of a subject was, so far as could it be capable of proprietorship, the property of the government; that the justice which was to be satisfied was, therefore, public justice; that the deceased person and his family were viewed by the law only as members of the state; that the public, through the government, inflicted the punishment and received the amercement, and, so far as necessity existed, provided for the family, and therefore private redress or satisfaction was excluded. This subordination of reparation for the individual to the justice of

the country is given as the ground of postponing, even in the case of lower offenses than murders which amount to felonies, all *private actions* till after the criminal trials. See opinions *seratim* of Lord EL-LENBOROUGH and GROSE, J., (*Crosby* v. *Leng*, 12 East, 112.) Now, if we examine the statutes of Great Britain and the various states of the Union, we find that they in no instance authorize the action upon the doctrine of property in human life. They limit the amount of damages as in case of a fine. They permit such an action to be brought only in favor of those who would naturally be dependent upon the person slain, and, after his death, upon the state; and the effect of the action is, *pro tanto*, to relieve the state of a public charge. The suit for damages becomes a private action, and the right of action when once attached by the local law to the act of killing, may be enforced in the courts of any country to the same extent as any other personal action. *Dennick* v. *Railroad Co.* 103 U. S. 11; but the statutes are enacted in furtherance of public justice. The purpose of the statute is by civil remedy still further to atone for a wrong to the state.

Neither Lord Campbell's act, (9 and 10 Vict. c. 93,) nor the remedial statutes of any of the states of the United States, so far as I have been able to examine them, gives the creditors of the person killed any right to recover damages; and, under the Massachusetts statutes, (St. 1840, c. 80,) the procedure is to be by indictment, and the reparation by fine not less than $500 nor more than $5,000, which is to be given by the state to the widow, and if there is no widow, to the heirs.

My conclusion, therefore, is that the recent statutes, beyond their territorial force, tend rather to uphold and supplement the principle upon which private actions were prohibited, leaving the matter of what prosecutions and actions shall follow the killing of a member of the state, with what limits and conditions, to be determined by that department of the government which regulates the infliction of public justice.

According to this view the courts of admiralty are controlled by the statutes of the country upon the subject,—equally with the common-law courts,—and, when the statute has given no remedy, are powerless equally with the other courts to give reparation.

There are two acts of parliament which give the English admiralty courts complete power to award damages in such a case as this: Lord Campbell's act, which gives a right to recover damages, and the "admiralty court's act," (1861,) 24 Vict. c. 10, which extends that right to ships, by declaring that "courts of admiralty shall have

jurisdiction over any claim for damages done by any ship." Independently of these statutes, the English courts of admiralty could not give these damages. So far as they have recently given them they have simply recognized and enforced what parliament has enacted.

It would be a serious question to what extent legislatures of the states of the the Union could make any law which would affect torts perpetrated by vessels upon the high seas, since this whole subject is but an incident of commerce, the regulation of which is by the constitution vested in the congress. Article 1, § 8. But the power of the congress of the United States over the whole subject is absolute. It can make a law which shall effect its shipping, leaving to treaty or comity the application of the laws of foreign nations to their shipping; or they may make laws which shall operate upon its admiralty or other courts and include all vessels. The congress has already established such a rule for the courts of the United States with reference to one class of acts. It has already provided that there shall be a right of action to recover damages for any deprivation of rights secured by the constitution, and in case of death caused by such wrongful act, legal representatives may recover not exceeding $5,000 for benefit of widow, and if no widow, for benefit of next of kindred. Rev. St. art. 1981, p. 344. If such a deprivation were caused to the citizens of the United States upon the high seas, undoubtedly the courts of admiralty of the United States could award the damages. The congress has but to extend this rule for our courts to all collisions or torts resulting in death, committed on the high seas, which may affect the ships or be brought before the courts of the United States. Until that is done—until the law-making or treaty-making power has created this right and affixed its limitations—courts cannot decree damages in actions by one person for the death of another upon the high seas.

Except so far as relates to the personal effects, the exception to the libel is maintained.

---

In the admiralty courts of the United States the death of a human being upon the high seas, or waters navigable from the sea, caused by negligence, may be complained of as an injury, and the wrong redressed, under the general maritime law. *The Harrisburg*, 15 Fed. Rep. 610. See, also, *The Favorite*, 12 Fed. Rep. 216, note, citing cases, and *The Garland, post*, 283.—[Ed.