## THE ALASKA.[1]

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR
THE SOUTHERN DISTRICT OF NEW YORK.

No. 1217. Submitted March 11, 1889. — Decided April 1, 1889.

In a suit in admiralty, *in rem*, in a District Court, against a British steam-
ship, brought by the widows of five persons, to recover $5000 each, for
the loss of their lives, on board of a pilot-boat, by a collision which
occurred on the high seas between the two vessels, through the neg-
ligence of the steamship, a stipulation for value was given by the claim-
ant of the steamship, in the sum of $25,000, to obtain her release. The
District Court dismissed the libel. It was amended by claiming $10,000
for the loss of each life, and then the libellants appealed to the Circuit
Court, which made the same decree. The libellants having appealed to
this Court, the appellee made a motion, under subdivision 5 of Rule 6, to
dismiss the appeal for want of jurisdiction, and united with it a motion
to affirm; *Held*, that the amount involved, if not the entire sum of
$25,000, was, at least, the sum of $10,000 in each case, and that the
motion to dismiss must be denied:

But as there was sufficient color for the motion to dismiss to warrant this
court in entertaining the motion to affirm, the decree was affirmed, on the
ground that the appeal was taken for delay only, in view of the decision
in *The Harrisburg*, 119 U. S. 199, that in the absence of an act of
Congress or of a statute of a State giving a right of action therefor, a
suit in admiralty cannot be maintained in the courts of the United
States to recover damages for the death of a human being on the
high seas or on waters navigable from the sea, which was caused by
negligence.

MOTIONS TO DISMISS OR TO AFFIRM. The court in its opinion
stated the case as follows:

This is a motion to dismiss the appeal in this case, and
united with it is a motion, under subdivision 5 of Rule 6, to
affirm the decree below, on the ground that, although the
record may show that this court has jurisdiction, it is manifest

---

[1] The docket title of this case was *Catharine A. Metcalfe, Mary E. Noble,
et al., Appellants*, v. *The Steamship Alaska, her Engines etc., Lady D. E.
Pearce, Sir William George Pearce, James Robertson, and Richard Barnwell,
Executors of William Pearce, Deceased, Claimants.*

the appeal was taken for delay only, or that the question on which the jurisdiction depends is so frivolous as not to need further argument.

The suit is a libel *in rem*, in admiralty, filed in the District Court of the United States for the Southern District of New York, by the owners of the pilot-boat Columbia, against the British steamship Alaska, to recover damages for the loss of the Columbia by a collision with the Alaska, on the 2d of December, 1883, on the high seas near the coast of Long Island, New York. The libel also embraced a claim for the loss of property and personal effects by some of the libellants. There was claimed for the loss of the pilot-boat, $16,000, and for the loss of the other property, $2100. It was alleged that the collision occurred solely through the negligence of the persons in charge of the Alaska. All the persons on board of the pilot-boat were drowned. Among them were four pilots and a cook. One of the four pilots was a part-owner of the Columbia.

William Pearce, of Glasgow, Scotland, filed a claim to the Alaska, after her attachment, and also gave a stipulation for value, in the sum of $20,000, to secure the release of the Alaska from the claims for the loss of the Columbia and of the personal effects. A supplemental libel was filed by the widows of the four pilots and of the cook who were drowned, and in it four of them on behalf of themselves and infant children severally, and the other one on her own behalf, claimed in each of the five instances damages in the sum of $5000, for the loss severally of the lives of the persons so drowned. After the filing of the supplemental libel, Pearce gave a further stipulation for value, in the sum of $25,000, to secure the release of the Alaska from the claims for the loss of the five lives. The latter stipulation was in the following terms:

"Whereas a supplemental libel was filed on the 22d day of November, in the year of our Lord one thousand eight hundred and eighty-four, by Catherine A. Metcalfe, Mary E. Noble, Agnes Arnold, Mary Wolf, and Bella Forblade against the British steamship Alaska, her engines, etc., for the reasons and causes in the said libel mentioned; and whereas the said

steamship Alaska, her engines, in the original ac on brought against said vessel by Augustus Van Pelt and others, was in the custody of the marshal under the process issted in pursuance of the prayer of the said libel; and whereas a claim to said vessel has been filed by William Pearce, and the value thereof has been fixed by consent at twenty-five thousand dollars for the purposes of this action, as appears from said consent now on file in said court; and the parties hereto hereby consenting and agreeing, that in case of default or contumacy on the part of claimant, or his surety, execution for the above amount may issue against their goods, chattels, and lands:

"Now, therefore, the condition of the stipulation is such, that if the stipulators undersigned shall at any time, upon the interlocutory or final order or decree of the said district court or of any appellate court to which the above-named suit may proceed, and upon notice of such order or decree to Wilcox, Adams & Macklin, Esquires, proctors for the claimant of said steamship Alaska, her engines, etc., abide by and pay the money awarded by the final decree rendered by this court or appellate court, if any appeal intervene, then this stipulation to be void; otherwise to remain in full force and virtue."

Pearce put in exceptions and an answer to the libel and the supplemental libel, denying the liability. The District Court, on a hearing on pleadings and proofs, entered an interlocutory decree, adjudging that the collision was caused by the mutual fault of the Alaska and the Columbia, and referring it to a commissioner to ascertain the damages. 27 Fed. Rep. 704. The commissioner made his report, which was excepted to by both parties, and a decree was made by the District Court awarding to the libellants certain sums as damages for the loss of the Columbia and of personal effects; and dismissing the supplemental libel in respect of the damages claimed for the loss of lives.

Both parties appealed to the Circuit Court, the claimant on the ground that the libellants were not entitled to any damages, or, if to any, that the damages allowed were excessive; the libellants on the ground that they were entitled to full

damages, instead of only half damages, and that the value of the Columbia had been allowed at too small a sum; and the libellants in the supplemental libel on the ground that they were entitled to full damages. Before these appeals were perfected, it was consented by the parties that the supplemental libel might be amended so that the claim for the loss of life should be $10,000 in each of the five cases, instead of $5000.

The Circuit Court (33 Fed. Rep. 107) made a like decree with that of the District Court, finding that both vessels were in fault for the collision, and dividing the damages and the costs of both courts between the respective parties; and dismissing the supplemental libel for the loss of the lives, without costs of either court to either party.

The sums awarded by the decree of the Circuit Court were paid, and the libellants in the supplemental libel appealed to this court.

*Mr. George Bethune Adams* for the motions.

*Mr. James Parker* opposing.

The motion to dismiss cannot be granted, as it is clear that the amount in controversy exceeds the jurisdictional amount. *Oliver* v. *Alexander*, 6 Pet. 143; *The Mamie*, 105 U. S. 773; *Ex parte Baltimore and Ohio Railroad*, 106 U. S. 5; *Davies* v. *Corbin*, 112 U. S. 36. And it is well settled that the motion to affirm will not be entertained unless there is color of right to the other motion. *Whitney* v. *Cook*, 99 U. S. 607; *Hinckley* v. *Morton*, 103 U. S. 764; *Micas* v. *Williams*, 104 U. S. 556; *Ackley School District* v. *Hall*, 106 U. S. 428; *Davies* v. *Corbin*, 113 U. S. 687.

Should, however, this court deem it proper under the rule, to entertain the motion to affirm, we present the following in opposition to such action.

Such motion under subdivision 5 of Rule 6, can only be made upon two grounds. 1. That the appeal was taken for delay only. 2. That the same is so frivolous as not to need further argument.

This appeal cannot be said to be taken for delay only, because there is no decree against the appellants, the execution of which can be delayed by appeal. They are under no obligation to the appellees of any nature. There is nothing to delay about. Their libels were dismissed without costs to either party, because the Circuit Court felt itself bound by the decision of this court in *The Harrisburg*, 119 U. S. 199.

The second ground demands more consideration. It is always with great embarrassment. that a counsel stands before this court to appeal to it to do anything that will tend to cast a doubt upon the correctness of its own decisions; but, on the other hand, I am sure that inasmuch as my duty to my clients requires me so to do, no pride of opinion will induce the court to refuse to hear their plea in the ordinary course of its administration of justice.

Ever since admiralty law began to be administered a conflict has existed between the admiralty and common law courts of Great Britain as to the jurisdiction of the former. It is now settled there that "collisions and injuries to property and persons on the high seas" are subjects of admiralty jurisdiction. Benedict Adm. §§ 74, 111.

In the United States the same struggle began with the adoption of the Constitution, and has continued until now. In *The Thomas Jefferson*, 10 Wheat. 428 (1825), Chief Justice Marshall, as the mouthpiece of a unanimous court, declared that: "The admiralty has no jurisdiction over contracts for the hire of seamen, except in cases where the service is substantially to be performed on the sea or upon waters within the ebb and flow of the tide." This was reasserted in *Peyroux* v. *Howard*, 7 Pet. 324; *The Hope*, 10 Pet. 108; *The Orleans* v. *Phœbus*, 11 Pet. 175; *Waring* v. *Clarke*, 5 How. 441. Thus the law continued until 1851, when, in the case of *The Genesee Chief*, 12 How. 443, this court, Mr. Chief Justice Taney delivering the opinion, (Mr. Justice Daniel alone dissenting,) overruled all the foregoing decisions, and held that admiralty jurisdiction was *not* confined to waters within the ebb and flow of the tide, and that, too, upon the ground *that the former contrary decisions had not been well considered,*

although the learned Chief Justice himself and his associates, McLean, Wayne and Catron, JJ.; and such justices as Marshall, Johnson, Story, Washington, Thompson, Baldwin, Duvall and Todd had united in making them.

In respect to the admiralty jurisdiction to award damages growing out of loss of life, prior to the decision of *The Harrisburg*, a Chief Justice (Chase) and two of the justices of this court, (Woods and Blatchford, 6 Ben. 370,) the Circuit Courts of four Circuits, the District Courts of nine or ten Districts, had united in maintaining the jurisdiction on various grounds. See also *Ex parte Gordon*, 104 U. S. 515. The decision in *The Harrisburg* changed the uniform current of admiralty decisions on this subject.

In other matters this court has reversed its rule of jurisdiction and its views of the law. *Dred Scott* v. *Sandford*, 19 How. 393; *The Legal Tender Cases; Osborne* v. *Mobile*, 16 Wall. 479, reversed in *Western Union Tel. Co.* v. *Texas*, 105 U. S. 460, are instances; and there are many others.

Since the case of *The Harrisburg* was decided, in the case of *The Cephalonia*, 29 Fed. Rep. 332, which decision was affirmed on appeal by Mr. Justice Blatchford sitting as circuit judge, 32 Fed. Rep. 112, Judge Benedict held that damages for loss of life may be recovered in admiralty. That was, to be sure, a suit *in personam* by an administratrix. A tug had been sunk and several persons drowned by a collision which occurred within the Narrows in the harbor of New York, by the steamer Cephalonia, coming up astern of her. Suppose the same steamer had followed the tug to a point on the high seas just without the three mile limit and sunk her, and drowned the same parties under the same circumstances, would the admiralty court in such case have lost its jurisdiction?

The case is not identical with *The Harrisburg*. There the parties were all citizens of the United States. The vessel was owned in Pennsylvania, and the killing occurred in waters of Massachusetts. There was a remedy at common law in each of those States had the parties sued in time. But here the libellants and those who were wrongfully killed are, and were, citizens of New York; the wrong-doing vessel is owned

in Great Britain, and the wrongful killing occurred on. the high seas, without the territorial jurisdiction of any State or country, and in a place to which the general law, the *jus gentium*, applies, and to which the *common law* does not, and never could or did apply.

, In *The Harrisburg*, the libels had not been brought within the time limited by the statutes of Massachusetts or Pennsylvania.

By the statutes of the State of New York, (Code of Civil Procedure, § 1902,) such a suit must be brought within two years after the death. The deaths in this case occurred December 2d, 1883, and the libel was filed November 11th, 1884, within the two years prescribed by the statutes of New York.

In *The Harrisburg*, this court did not decide that branch of the case. How far the fact that we began within the time limited by the Code of New York affects jurisdiction; whether the suit should have been brought by the administrators; whether an action *in rem* against the offending vessel will lie : these questions will all arise in this case ; and, in respect to them, this case is different from that of *The Harrisburg*.

Unless these libellants can appeal to an Admiralty Court, they are remediless. They could not have appealed to the courts of the State of New York, because the deaths did not occur within that State, or in waters subject to its jurisdiction. Numerous decisions of the courts of that State of which these libellants are citizens have settled it, that, no action by an administrator will lie where the death complained of occurred without the State, unless proof is given that the statutes of the State in which the death occurred authorized such an action. *Whitford* v. *Panama Railroad*, 23 N. Y. 465 ; *Leonard Columbia Steam Nav. Co.*, 84 N. Y. 48 ; *Debevoise* v. *New York, Lake Erie &c. Railroad*, 98 N. Y. 377.

No statute law applies on the high seas, as between vessels and persons of different nations. There the admiralty law reigns supreme ; and the Court of Admiralty is the only court whose jurisdiction applies there.

In view of all these decisions and considerations, it cannot properly be said that the question upon which the jurisdiction

in this case depends is so frivolous as not to need further argument.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

The object of the appeal is to obtain a decree here that the Alaska is liable for the loss of the five lives. The ground alleged for the motion to dismiss the appeal is, that the sum in dispute as to each of the five lives is not over the sum of $5000, and, therefore, is not sufficient to give jurisdiction to this court. The view urged is, that the amount originally claimed by the supplemental libel for the loss of each of the five lives was $5000; that the stipulation in the sum of $25,000, given to release the Alaska from the five claims, was $5000 for each claim, the amount in dispute in each case being one fifth of $25,000; and that the case stands as if each of the five parties had commenced a separate suit for $5000, and five separate stipulations had been given, each in that amount.

But, as the stipulation is a unit, and is for the sum of $25,000, and in it the stipulators agree that execution may issue for the $25,000 against their property, and the condition of the stipulation is, that the stipulators shall pay the money awarded by a final decree, (not exceeding, of course, $25,000,) and as the claim of damages made by each one of the five parties is, by the amendment of the libel, $10,000 instead of $5000, it might very well be that some of the libellants would recover more than $5000, even on an apportionment of the damages. The fund of $25,000 is a common fund for the benefit of the five parties; and, on the facts of this case, the amount involved, on the question of jurisdiction, if not the entire sum of $25,000, is, at least, the sum of $10,000 in each case. *Gibson* v. *Shufeldt*, 122 U. S. 27, 31 *et seq.* and cases cited.

But there is sufficient color for the motion to dismiss, to warrant us in entertaining the motion to affirm. *Whitney* v. *Cook*, 99 U. S. 607; *Hinckley* v. *Morton*, 103 U. S. 764; *Micas* v. *Williams*, 104 U. S. 556; *The S. C. Tryon*, 105 U. S. 267; *Independent School Dist.* v. *Hall*, 106 U. S. 428; *Davies* v. *Corbin*, 113 U. S. 687.

On the merits, we are of opinion that this case is governed

by the decision in the case of *The Harrisburg*, 119 U. S. 199, and that this appeal was taken for delay only. In the case of *The Harrisburg*, it was held that, in the absence of an act of Congress or of a statute of a State, giving a right of action therefor, a suit in admiralty could not be maintained in the courts of the United States to recover damages for the death of a human being on the high seas or on waters navigable from the sea, which was caused by negligence. It is admitted by the counsel for the libellants that the statute of New York, (Code of Civil Procedure, § 1902,) on the subject of actions for death by negligence, does not apply to the present case, because the deaths did not occur within the State of New York, or in waters subject to its jurisdiction. It is further to be said, that that statute gives a right of action only to the executor or administrator of the deceased person, while the present suit is brought by widows; and that the statute provides only for a suit against an individual person or a corporation, and not for a proceeding *in rem*.

A distinction is sought to be drawn between the present case and that of *The Harrisburg*, on the ground that in that case the vessel was owned in Pennsylvania, while here the Alaska is a British vessel; and that in that case the wrongful killing occurred in the waters of the State of Massachusetts, while here it occurred on the high seas. But we see no sound distinction between the two cases. In the case of *The Harrisburg*, the alleged negligence which resulted in the death occurred in a sound of the sea, embraced between the coast of Massachusetts and the islands of Martha's Vineyard and Nantucket, parts of the State of Massachusetts. The question involved and decided in that case was, whether the admiralty courts of the United States could take cognizance of a suit to recover damages for the death of a human being on the high seas or on waters navigable from the sea, caused by negligence, in the absence of an act of Congress or a statute of a State, giving a right of action therefor. That question was answered by this court in the negative, and the decision entirely covers the present case.

*The motion to dismiss the appeal is denied, and the decree of the Circuit Court is affirmed.*