## Case No. 9,302.

### The MAUD WEBSTER.

### CHALMERS et al. v. HOWELL.

[8 Ben. 547.] [1]

District Court, S. D. New York. Nov., 1876. Jan., 1877.

COLLISION—AT PIER—LOCALITY — JURISDICTION— LIGHTS—FAIRWAY—PRESUMPTION.

1. Under a contract between H. and the proper officer of the United States, H. was engaged in furnishing the materials for, and constructing the pier for, a lighthouse to be erected at the Middle Ground, Stratford Shoals, in Long Island Sound. He had carried the work up about four feet above high-water mark, and had inside of the ring of stone work, and supported by four wire guys anchored outside of the rip-rap wall, a derrick which he used in the work. This derrick was run into on the night of September 2d, 1875, by the schooner M. W., which struck one of the guys, and both the schooner and the derrick were injured, and cross libels were filed to recover damages. The shoal, on which the pier was being built, was out of the fairway, and, for more than two years before, it would have been impossible for any vessel to sail over the spot because of loose stones and rip-rap, placed there as a foundation'for the pier before H. began his work. No light had been placed by H. on the structure. He had asked permission to place one, but it had been refused by the engineer-in-chief of the light-house department. *Held*, that it must be presumed that jurisdiction over the place where the pier was being erected had been ceded to the United States.

2. The schooner was out of her proper course when she struck the derrick.

3. H. was not in fault for having no light and no watchman on the structure, and was not liable for the damage to the schooner.

4. The court had no jurisdiction of the claim of H. for injury to the derrick, the damage not being done upon the water.

[Cited in The M. R. Brazos. Case No. 9,898; The C. Accame, 20 Fed. 643; Leonard v. Decker, 22 Fed. 742. Quoted in The Professor Morse, 23 Fed. 806. Cited in the City of Lincoln, 25 Fed. 836; Milwaukee v. The Curtis, 37 Fed. 706; The H. S. Pickands. 42 Fed. 240; The John C. Sweeney, 55 Fed. 543; Homer Ramsdell Transp. Co. v. Compagnie Generale Transatlantique, 63 Fed. 848.]

5. The locality of an injury is the locality of the thing injured and not of the agent by which the injury is done.

[Cited in The Professor Morse, 23 Fed. 804.]

[These are two libels. One by David V. Howell against the schooner Maud Webster, George S. Chalmers and others owners, to recover damages sustained by a collision between the schooner and Howell's derrick. The other was by the owners of the schooner against Howell to recover the damages sustained by the schooner, due to such collision, which they claimed was owing to Howell's negligence in placing his derrick in such a position.]

Albert Stickney, for libellant.

George A. Black, for claimants.

[1] [Reported by Robert D. Benedict. Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

BLATCHFORD, District Judge. David V. Howell files a libel against the schooner Maud Webster, to recover the sum of $4,000, as the amount of the damages sustained by him, in consequence of the schooner's having come in contact with a derrick and other articles belonging to the libellant. The libel alleges that the libellant, under a contract between himself and the proper officer of the United States, acting for the United States, was engaged in furnishing the materials for, and constructing the pier for, a light house to be erected at the Middle Ground, Stratford Shoals, in Long Island Sound, and owned and had at that place a derrick and tackle and machinery, stone and material, which were being used by him in constructing said pier under said contract; that, on the 2nd of September, 1875, the schooner Maud Webster ran into and upon the said derrick and other articles and damaged them; that the weather, at the time, was clear, and the schooner was in a place where she would not have been with the exercise of care and good seamanship, and the collision was occasioned by negligence on the part of the schooner, her master and crew, and not by any negligence of the libellant or any of his agents or servants; and that the case is within the admiralty and maritime jurisdiction of this court. The libel prays for process against the schooner, and that she may be condemned and sold to pay such damages.

The answer to said libel alleges that the collision caused damage to the schooner, and was occasioned by no negligence on the part of the master and crew of the schooner; that the weather was thick and the night dark, and the schooner was, at the time, properly navigated, with a watch properly stationed and attentive; that there was no light on the derrick, nor was any one on the same, and it had been very recently erected in a place where vessels of the draft of the schooner were in the habit of passing; that the derrick and other articles had, at the time of the collision, been very recently put in the navigable waters of Long Island Sound, and were negligently left by the libellant without light or watchman, or anything to indicate their existence to vessels navigating the waters of the Sound; that the lights of the schooner were properly placed and burning; and that the collision was occasioned wholly by the negligence of the libellant.

The owners of the schooner file a libel against Howell to recover for the damages sustained by the schooner. That libel contains substantially the same allegations that are found in the answer to the libel filed by Howell. The answer to the libel filed by the owners of the schooner contains substantially the same averments that are found in the libel filed by Howell.

It is very plain, upon the evidence, that the schooner was very much out of her proper course. Her proper course would have been a considerable distance to the north of the

pier or else south of the light-ship. The light-ship was considerably south of the pier. I think the evidence shows that, if a careful watch had been kept on board of the schooner, she would not have been where she was. Either through want of attention and observation on the part of those who were on her deck at the time, or through want of seamanship on their part, they allowed their vessel to strike this pier. The place where the pier was being erected was a shoal. Before any attempt was made to put a structure there, there had never been more than two feet of water there at low tide. The rise of the tide there was about five feet. The schooner might, perhaps, have gone over the spot safely before anything had been done there towards erecting the pier. But, for more than two years before this collision happened, it had been impossible for any vessel to sail over the place, because of loose stones and rip-rap placed there as a foundation for the pier. Buoys and charts showed that the proper course for vessels was wide of this spot. The light-ship was the recognized northern limit of the southern channel way, and the buoy to the north of the pier was the recognized southern limit of the northern channel way. The loose stones and rip-rap above referred to, had been placed there a long time before Howell had anything to do with the work. Howell had carried the work up to a height about four feet above the surface of the water, at high water. Notices from the United States light-house department that a light-house was being built at this spot, had been published in several newspapers. It is not shown that the master of the schooner in fact knew of the existence of this structure there.

But, although the schooner was out of her proper course through some cause, it is contended on her part, that, if there had been a light set upon the structure, or a watchman upon it to warn her off, she would not have struck it, and that it was the duty of Howell to have had a light or a watchman upon it. It must be presumed that jurisdiction over the place where this pier was being erected had been ceded to the United States, inasmuch as it is provided by law that no light-house shall be built on any site until cession of jurisdiction over the same has been made to the United States. Rev. St. U. S. § 4661. By section 4666 of the Revised Statutes of the United States, all works of construction in respect of light-houses are placed under the immediate superintendence of such engineer officer of the army of the United States as shall be detailed for the service. It is proved that Howell asked permission to put a light on the structure, but was forbidden by the engineer-in-chief of the light-house department to do so, on the ground that the lights of the light-ship were the proper lights to guide vessels, and that a light on this structure might lead vessels astray. Independently of this, this structure was not in any chan-

nel or fairway. If Howell had had a vessel there, and the schooner had struck the vessel, Howell would not have been in fault in not having a light or a watchman on such vessel, because such vessel would not have been moored in any channel, roadstead or fairway where vessels were accustomed to go. A fortiori, no such obligation rested on Howell, in respect of the structure in question. There being no fault on the part of Howell, the libel against him must be dismissed, with costs.

In respect to the libel filed by Howell against the schooner, I am of opinion that this court has no jurisdiction of the subject-matter of that suit. The objection to the jurisdiction was not taken in the answer, and, although the attention of counsel was called to the point at the trial, it seemed to be supposed on the part of the schooner, that, if this court had jurisdiction of the suit against Howell, it must have jurisdiction of the suit against the schooner. But as an objection to jurisdiction in respect of subject-matter is one which may be taken at any stage of a case, even in an appellate court, and even though not raised in pleading, it is the duty of the court to decline jurisdiction when want of jurisdiction is clear.

If Howell had been held to be in fault for negligently causing an obstruction to navigation, this court could have made a decree against him in the suit brought by the owner of the schooner. It could have exercised jurisdiction over a case of such negligence, because the damage sustained by the schooner would have been sustained on the water, in the course of her navigation, through an obstruction to navigation, although the thing which formed the obstruction which injured the schooner was affixed to and a part of the earth, and was not afloat. Philadelphia, W. & B. R. R. Co. v. Philadelphia & Harve de Grace Steam Towboat Co., 23 How. [64 U. S.] 209; Packet Co. v. Atlee [Case No. 10,341]; Atlee v. Packet Co., 21 Wall. [88 U. S.] 389. But where, although the origin of the wrong is on the water, the consummation and substance of the injury are on the land, the admiralty has no jurisdiction. In this case, the schooner which did the injury to Howell's property was on the water, was afloat and engaged in navigation, but Howell's property was a part of the soil of the earth, or was affixed to it, and was wholly on land. In a case of tort, there can be no jurisdiction in the admiralty, unless the substantial cause of action, arising out of the wrong, was complete upon navigable waters. This was decided in the case of The Plymouth, 3 Wall. [70 U. S.] 20. In that case a vessel lying at a wharf, in navigable water, took fire, owing to the negligence of those in charge of her. The fire communicated to and consumed the wharf and some buildings on it, with their contents. The owners of the burned wharf and buildings sued the owners of the vessel, in admiralty,

to recover for the loss. The district court and the circuit court dismissed the libel for want of jurisdiction and the supreme court affirmed the decrees on the same ground. In that case, it was urged, that, as the vessel was a maritime instrument, the tort was necessarily a maritime tort, but the court expressly overruled that view. The present case does not differ from the one cited.

In the case of The Neil Cochran [Case No. 10,087], a corporation owning a swing bridge, which spanned a navigable river, but was so constructed as to swing out of the way of vessels which wished to pass, sued a vessel in rem, in the admiralty, in the district court for the Northern district of Ohio, to recover for damage done by her to the bridge by negligently running into it. The point was taken that the wrongful act alleged did not constitute a maritime tort, and the court held, on the authority of the case of The Plymouth [supra], that, although the negligence or origin of the wrong was on board of a vessel, an instrument of commerce, and although the vessel was, at the time of the negligent act, on navigable waters, yet the whole damage or consummation of the injury was on land, and the admiralty court had no jurisdiction of the suit.

In the case of The Ottawa [Case No. 10,-616], the lessees of a wharf or dock, which extended from the shore over the water of a navigable lake, sued a vessel in rem in the admiralty, in the district court for the Eastern district of Michigan, to recover for damages done by her to the wharf, by negligently colliding with it. The court held that the injury done to the wharf could not be considered as done upon the water; that the wharf must be considered as land, or as on the land, or as the shore; that it was of no consequence that the damage was done by a vessel, if it was not also done upon the water; and that the court had no jurisdiction of the suit. Although the criterion of admiralty jurisdiction in cases of tort is locality, yet, as was correctly remarked in that case, the place or locality of the injury is the place or locality of the thing injured and not of the agent by which the injury is done. See, also, The Rock Island Bridge Case, 6 Wall. [73 U. S.] 213, 216; Russell v. The Empire State [Case No. 12,145], Russell v. The Asa R. Swift [Id. 12,144].

In England, there is a statute (Act May 17, 1861; 24 Vict. c. 10, § 7) which provides that "the high court of admiralty shall have jurisdiction over any claim for damage done by any ship." This has been held to give that court jurisdiction over every case of damage done by any ship, and to authorize a suit in rem against a vessel, in admiralty, by the owners of a breakwater, to recover for injury done by the vessel to the breakwater. The Uhla, L. R. 2 Adm. & Ecc. 29, note. There is no such statute of the United States, giving such an enlarged jurisdiction to the courts of admiralty. The question is left to be decided under the provision of the constitution (article 3, § 2) which says that the judicial power of the United States shall extend "to all cases of admiralty and maritime jurisdiction," and under the 8th subdivision of section 563 of the Revised Statutes, which says that the district courts shall have jurisdiction "of all civil causes of admiralty and maritime jurisdiction." Under these provisions, the suit against the vessel cannot be maintained, and the libel in it must be dismissed, with costs.

A re-argument of the suit of Howell against the schooner, for the damage done to the derrick, was had and the following decision was given, in January, 1877:

BLATCHFORD, District Judge. In deciding this case recently, I held that the libellant's injured property was "a part of the soil of the earth, or was affixed to it, and was wholly on land." The libel alleges that the libellant had, at the Middle Ground, Stratford Shoals, in Long Island Sound, where he was erecting a pier for a lighthouse for the United States, a derrick and tackle and machinery, stone and material, which were being used by him in constructing said pier, and that the schooner Maud Webster ran into and upon said derrick and other articles and damaged them. The libel seeks to recover such damages in rem against the schooner. The evidence was, that whatever there was belonging to the libellant, which was damaged by the schooner, was not afloat, and did not rest upon any floating support, or upon any boat or vessel or raft which had at any time floated, and was not anchored there, in the sense in which a vessel or a buoy is anchored to the soil below so as to float on or in the water above, but was sustained against the force of gravity wholly by direct pressure upon the soil of the earth. On these facts, I held, on the authority of the cases of The Plymouth, 3 Wall. [70 U. S.] 20; The Neil Cochran [Case No. 10,087]; and The Ottawa [Id. 10,616],—that the damage was not done upon the water, because the locality of the thing injured was not upon the water, and that the admiralty had no jurisdiction of the suit.

At the request of the counsel for the libellant, this question has been re-argued before me. The libellant had constructed a circle of rip-rap about 70 feet in diameter. The interior of this was open both across and down through the water in it to the soil of the bottom, except where a ring of stone was built up to a line above the surface of the water. At low water men could stand on the bottom inside of the ring. There was a derrick there, used in constructing the pier, but not to remain there after the completion of the light-house. The derrick consisted of an upright, the lower extremity of which rested on the soil at the bottom of the water inside of the rip-rap, and the upright rose through what water was there into the air, and was

steadied above by four wire guys which extended to a distance and were anchored to the soil at the bottom of the water outside of the rip-rap. The derrick had an arm or arms above. It is claimed by the libellant that the schooner struck one of the guys.

It is urged that the place where the accident occurred was on the high seas, and not within the limits of any state, and was, therefore, not on the land. The view is, that as it happened in the midst of the water, it must be considered as having happened upon the water. It is also contended that the derrick was there only temporarily; that it was resting on the bottom of the high seas; that such bottom was not land; and that the property injured must all of it be regarded as personal property on the high seas.

I cannot regard the injury to the libellant's property as having occurred on the water, in the sense of the decisions above cited, although, in one sense, it occurred in the water, because it occurred at a place in the midst of or surrounded by the waters. The property was not in use for purposes of navigation, and was none of it afloat, and was all of it supported by direct pressure on the soil of the earth. It was no more upon the water, and the injury to it did not any more happen on the water, than did the injury to the wharf in the cases of The Plymouth [supra] and The Ottawa [supra], or the injury to the bridge in the case of The Neil Cochran [supra].

I must adhere to my decision dismissing the libel, with costs.