## The Mary Stewart.

### (*District Court, E. D. Virginia.* December 27, 1881.)

1. ADMIRALTY—TORTS ON LAND NOT COGNIZABLE IN—PERSONAL INJURIES.
   An injury done to a man, while he is standing on a wharf, by a bale of cotton which is being hoisted aboard a ship loading at the wharf, but which falls before it reaches the ship's rail and strikes him, is not cognizable in the admiralty.

2. ADMIRALTY JURISDICTION CANNOT BE CONFERRED BY STATE STATUTES.
   Nor can jurisdiction over such a tort be given by a state statute.

3. CHARTER-PARTY—ACTION DEFEATED FOR WANT OF PRIVITY.
   Under the contract between the ship and the charterers the latter are to employ and pay for the stevedoring, and the ship is to furnish the tackle and falls by which the loading is to be done. Under this contract the ship furnishes a rope, which breaks after a short use of it by the stevedores, and one of the employes of the stevedore is injured by the falling of a cotton bale. *Held,* that there was no privity between him and the ship, he not being a party to or interested in the contract of charter-party, nor any violation of any duty towards him, and that consequently he could not maintain an action against the ship or her owners.

In June, 1881, the ship Mary Stewart was chartered by Reynolds Bros., of Norfolk, to load with cotton. By the charter-party, Reynolds Bros. agreed to furnish and pay for the stevedoring, and the ship agreed to furnish the tackle necessary for loading. The officers of the ship had no control over the manner in which the stevedoring was carried on, but the ship was entirely under the control of the stevedores while loading. The ship furnished a three-inch rope. One end of this rope was fastened to an engine which stood on the wharf and furnished the hoisting power. The rope was then passed through a pully attached to one of the masts of the ship, and the other end was fastened to the cotton which was being hoisted aboard. After the rope had been used a short time it broke near the engine, and one of the bales of cotton which was being hoisted fell and seri-

ously injured the libellant, W. A. Segar, who was one of the employes of the stevedore. He was standing at the time on that part of the wharf which is called the apron, and which projects out over the water, resting on piles driven into the water, and attached to that portion which is cribbed and filled in. He thereupon libelled the ship. The accident happened at the wharf of Reynolds Bros., in Norfolk.

*Burroughs & Bro.* and *E. Spalding,* for libellant.

*Sharp & Hughes,* for the ship.

HUGHES, D. J. It is clear that the cause of action set out in the libel is without the jurisdiction of the admiralty. In cases of tort the locality alone determines the admiralty jurisdiction. Only those torts are maritime which happen on navigable waters. If the injury complained of happened on land, it is not cognizable in the admiralty, even though it may have originated on the water. *The Plymouth,* 3 Wall. 20. This springs from the well-known principle, that there are two essential ingredients to a cause of action, viz., a wrong, and damage resulting from that wrong. Both must concur. To constitute a maritime cause of action, therefore, not only the wrong must originate on water, but the damage—the other necessary ingredient—must also happen on water.

Now, the injury in the case at bar happened on the land. Wharves and bridges are but improvements or extensions of the shore. They are fixed and immovable, and are a mere continuation and part of the real estate to which they are attached. And this is the case, whether they project over the water or not. Injuries done to or on them, therefore, are not cognizable in the admiralty. *The Rock Island Bridge,* 6 Wall. 213; *The Neil Cochran,* 1 Brown, Adm. 162; *The Ottawa,* Id. 356.

Not being cognizable in the admiralty, such injuries cannot be made so by the state statute. Such a statute cannot, of itself, confer jurisdiction on the admiralty courts. The various state statutes attempting this have no effect of themselves, but are operative only because, to a limited extent, they have been adopted by the twelfth rule in admiralty of the United States supreme court. And the only effect even of that rule is to annex the additional right of a proceeding *in rem* to a contract already maritime in nature. *The Pacific,* 9 FED. REP. 120.

As the libel must be dismissed for want of jurisdiction, I might well refrain from passing on the other questions discussed. But

inasmuch as the question of privity has been elaborately argued, I will pass upon that also.

The libellant was not employed by the ship, but by Mr. Donald, the stevedore. He was not a party to the contract between the ship and the charterer. It is well settled that where a party is delinquent in a duty imposed by contract, no one but a party to the contract can maintain an action. It is only where a party neglects a duty imposed by law, in other words, a duty to the public, that an action will lie on the part of any one injured thereby, irrespective of privity. That is, if the injury complained of arose from the neglect of a public duty, any one injured may maintain an action, and the mere fact that there is a contract between one of the parties and a third person will not defeat the action. Now it can hardly be argued that furnishing a proper rope is a duty imposed by law. It is a duty imposed by charter-party alone, a duty due to the charterer alone, and for violation of which he alone can sue. It was not a duty to the public. Had the masts of the ship, for instance, been insecurely fastened and fallen and injured any one, that would have been a violation of a public duty,—a duty imposed by law on every one to have no dangerous structures on his property, which may injure those who come on the premises by the invitation or permission of the owner. But a rope can hardly be called a dangerous structure. The injury in the case at bar arose not from the rope itself, but from its use. The proximate cause of the accident, therefore, was the use of the rope by the stevedores, not the furnishing of the rope by the ship.

The cases of *The Kate Cann,* 2 FED. REP. 241, and *Coughtry* v. *Woolen Co.* 56 N. Y. 124, quoted by counsel for libellant, do not militate against this view, but, on the contrary, sustain it. In the former the injury arose from the falling of some dunnage, which had been insecurely fastened. The neglect to fasten it properly and safely was clearly a violation of a duty imposed by law. So, too, in the latter case, where the injury arose from the falling of a scaffold on the defendant's premises. Ample authority for the doctrine laid down above may be found in the following cases: *Alton* v. *Ry. Co.* 19 C. B. (N. S.) 213; *Tollit* v. *Sherstone,* 5 M. & W. 288; *Winterbottom* v. *Wright,* 10 M. & W. 112; *Collis* v. *Selden,* L. R. 3 C. P. 496; *Playford* v. *Telegraph Co.* L. R. 4 Q. B. 705.

I will sign a decree dismissing the libel, with costs.