THE C. ACCAME.[1]

(*Circuit Court, N. D. Florida.*   April, 1884.)

ADMIRALTY JURISDICTION.

>   Where a damage done is done wholly on land, the fact that the cause of the damage originated on water, subject to the admiralty jurisdiction, does not make the case one for the admiralty.   *The Plymouth,* 3 Wall. 20.

Admiralty Appeal.

*S. R. Mallory, E. A. Perry, I. E. Yonge,* and *John C. Avery,* for libelant.

*I. P. Jones, Wm. Fisher,* and *R. L. Campbell,* for claimants.

PARDEE, J.   The original libel, among other things, charges:

"That on the ninth day of September, inst., while the said barkentine was lying at libelant's said wharf *without libelant's permission, and against his express direction,* there came a violent storm of rain and wind, and said barkentine, by the negligence, want of proper care and diligence, on the part of the said barkentine and those in charge of her, ran into said wharf of libelant, completely breaking down a large portion of it, and greatly injuring and damaging the same, rendering necessary, by such negligence and want of care on the part of the said barkentine and those having her in charge, great repairs to be made on said wharf, at great cost and expense, by libelant, besides being deprived of the use and profit of said wharf for the period of three months, all of which is greatly to the injury and damage of libelant."

Thereafter an amended libel was filed, charging as follows:

"That on the ninth day of September the said barkentine C. Accame was lying at said wharf, under a *contract with libelant for the discharge of ballast at said wharf;* that when said barkentine, by the master thereof, applied for a berth at said wharf, he was informed that the wharf at that time was undergoing repairs, and that portions of said structure were not in a safe and proper condition, but that said barkentine could be accommodated with a suitable and safe berth at a certain point, which was pointed out and assigned to said barkentine, and accepted by the master thereof, where she was accordingly placed and moored for the purposes of said contract, under which, and the rules and customs of wharves at this port, she was entitled to remain until she had taken in sufficient cargo for stiffening, without extra wharfage, but if she remained, occupying the wharf after such stiffening had been taken in, she was required to pay one cent per ton for each and every day so consumed; that afterwards, notwithstanding the information first given touching the unsafe condition of said portion of the wharf, and *in disregard of frequent subsequent warnings* given by libelant, the master, after said barkentine had taken in sufficient stiffening cargo, moved her from the berth so assigned to the point where she lay moored on the ninth day of September, 1882, which was a portion of the wharf which had, as above stated, been pointed out to the master as unsafe; that on the said ninth day of September, 1882, while said barkentine was lying at that portion of the said wharf to which she had been removed by the master, as set forth in the second article, there came on a violent storm of rain and wind, and, said barkentine being moored to said wharf, by the *negligence, want of proper care and diligence,* on the part of said barkentine, and the master thereof, and in violation of his duty under the said contract last above set forth, pulled and completely broke down a large portion of libelant's said wharf, and thereby greatly in-

1 Reported by Joseph P. Hornor, Esq , of the New Orleans bar.

jured and damaged the same, rendering it necessary, by said acts, negligence, want of proper care and skill, and by such violation of said contract on the part of said barkentine, the master, and those in charge of her, to make great repairs upon said wharf, at great cost and expense to the libelant."

It seems to be conceded that the claim for damages *ex delicto*, by reason of the matters alleged, is without the jurisdiction of the admiralty court, by reason of the locality of the thing injured. At all events, the authorities are that way. *The Plymouth*, 3 Wall. 20; *The Maud Webster*, 8 Ben. 547; *The Neil Cochran*, 1 Brown, 162; *The Ottawa*, Id. 356. It must have been with this view of the law that the amended libel was filed, and the attempt made to claim that the damages arose *ex contractu*. But, taking the amended libel as a whole, I am unable to see that any better or different case is made therein than in the original libel. While in the amendment, in direct contradiction of the original and sworn libel, it is first stated that the barkentine was lying at the wharf under a contract with libelant for the discharge of ballast, in the same article it is alleged "that afterwards, notwithstanding the information first given touching the unsafe condition of said portion of the wharf, and in disregard of frequent subsequent warnings, the master removed the ship to the unsafe portion of the wharf." And in the next article it is alleged that while lying at that portion of the wharf to which she had been removed, as set forth, (*i. e.*, without authority and against warnings,) there came on a violent storm, and by the negligence, want of proper care and diligence, on the part of said barkentine and her master, the damage complained of was committed, etc. From such a state of facts I cannot see how it can be claimed that the alleged damages are the result of any breach of contract. If it is conceded that a ship using a wharf, and while lying at the same impliedly contracts to take good care of it and not damage it, as a tenant of a house may be said to contract, the case is not helped by such concession, for by the very terms of the libel the barkentine, in this case, without authority and against warnings, moved to an unsafe and forbidden portion of the wharf, and hence the damage by reason of the storm, etc., followed.

Taking the most favorable view of this case possible under the pleadings, I am unable to distinguish it from the case of *The Plymouth, supra*. In that case a vessel anchored at a wharf, and, owing to the negligence of those in charge, the vessel took fire, and the flames, spreading to the wharf, burned it. Here the ship ties up at a wharf without authority, and, owing to the negligence, want of proper care and diligence, of those in charge, batters the wharf down. There was as much of an implied contract in the one case as the other. If any difference can be made, the present case shows the plainer case of trespass and tort.

The judgment of the district court, dismissing the libel and amended libel, was clearly right, and the same judgment will be entered in this court.