## LEONARD v. DECKER and others.

### SCHUYLER v. SAME.

*[District Court, S. D. New York. December 20, 1884.]*

1. WHARVES AND SLIPS—NEGLIGENCE.
   Persons in possession of a wharf and collecting wharfage are answerable to vessels, coming there in the usual course of traffic, for damages arising from obstructions or defects in the wharf that are known or ought to be known to the lessees.

2. SAME—DAMAGE—JURISDICTION.
   Where bolts projected from the wharf, in consequence of the timbers which they had held in place getting torn away, and the wharf was left without proper repair, and injuries to the libelants' boats were caused by the projecting bolts, *held*, that the damage arose from negligence that constituted a maritime tort, of which the admiralty has jurisdiction, and for which the respondents, as lessees, were liable.

3. SAME—TORT, WHEN MARITIME.
   A tort is maritime where the injury is received upon a vessel afloat, though the negligence originated on land.

4. SAME—DUTY TO REPAIR WHARF—LESSOR AND LESSEE.
   Though the lessor be bound to repair, the lessee in possession is answerable to the vessel from which he collects wharfage for injury caused by the wharf's being negligently left out of repair.

In Admiralty.

*Beebe & Wilcox*, for libelants.

*W. Howard Wait*, for respondents.

BROWN, J. The libels in the above cases were filed to recover for damages sustained under similar circumstances, in March, 1882, by the canal-boats Vision and Mimose, while moored along the southerly side of the pier at the foot of Bethune street. The pier was somewhat out of repair. Some piles or fenders had been torn away, and the bolts which had secured them were left exposed and projecting outward beyond the side of the pier. The bolts were under water, except when the tide was low. The evidence satisfies me that both the canal-boats were injured by mooring along-side these concealed bolts without notice of the obstructions, or of the danger from them. The wharf was owned by the city of New York. The lease of it for three years had been put up at auction the year previous, and had been bid off by the respondents. The terms of the proposed lease gave the respondents the right to collect all wharfage that might be obtained from the pier, in consideration of a certain annual sum to be paid to the city as rent for the use of the dock; and the city was bound to keep it in repair. No formal lease was executed, but the respondents went into possession, collected the wharfage, and paid to the city the rent agreed upon in the terms of sale. Under these circumstances I must hold the respondents answerable for any damages sustained by vessels coming to the wharf in the usual course of traffic, arising from obstructions or defects in or about the wharf or slip,

that were known, or ought to have been known, to the respondents, upon the grounds stated in the recent case in this court of *Onderdonk* v. *Smith*, 21 FED. REP. 588.

The respondents were virtually lessees; they were in possession; and this dangerous projection was of a kind that they were bound to take notice of and to remedy at once, without waiting for the city to do the repairs, as it was doubtless bound to do. Had the obstruction been a concealed one, not previously known, the question would have arisen how far reasonable prior notice of it would have been a condition of the respondents' liability. That question does not arise here. The projecting bolts arose from the want of ordinary care and necessary repair of the pier; defects that were obvious to inspection and were known, or ought to have been known, to the respondents, or to their agents in charge of the dock. To suffer the wharf to remain in this dangerous condition without notice to vessels resorting to it in the ordinary course of business, and in effect upon the respondents' invitation, is negligence, and a breach of duty owed to such vessels. For the damages caused by such obstructions the respondents, as between them and vessels thus coming to the wharf, are bound to pay, unless reasonable warning and notice of the danger be given. The duty of the city to repair did not absolve the respondents from their duty to the vessels either to repair or to give notice of danger.

Counsel for the respondents has submitted an elaborate argument against the jurisdiction of the district court in this case, on the ground that the tort is not a maritime one, since the bolts that did the injury were attached to the pier, and belonged to the land and not to the water. Among the cases cited are the well-known cases supporting the counter-proposition that injuries done by vessels to wharves, or objects upon wharves, bridges, etc., are not maritime torts, and hence not within the jurisdiction of the district court. *The Plymouth*, 3 Wall. 20; *The Neil Cochran*, 1 Brown, Adm. 162; *The Ottawa*, Id. 356; *The Maud Webster*, 8 Ben. 547. Without entering at length into a discussion of these and other cases cited, which I have carefully examined, I need only say that they do not seem to me to sustain the contention of the respondents; but, on the other hand, to be entirely consistent with and to recognize the jurisdiction of this court over torts like the present, and that upon two distinct grounds: *First*, that the bolts which caused the injuries were an obstruction to navigation; and, *second*, because the damage done was inflicted upon a vessel afloat, and because the place where the injury is consummated and the damage actually received is regarded as the *locus* of the tort. In the case of the *Maud Webster*, *supra*, BLATCHFORD, J., says, (p. 551:)

"If Howell had been held to be in fault for negligently causing an obstruction to navigation, this court could have made a decree against him in the suit brought by the owner of the schooner. It could have exercised jurisdiction over a case of such negligence, because the damage sustained by the

schooner would have been sustained on the water, in the course of her navigation, through an obstruction to navigation, although the thing which formed the obstruction which injured the schooner was affixed to a part of the earth, and was not afloat. *Philadelphia, W. & B. R. Co.* v. *Philadelphia & Havre de Grace Steam Tow-boat Co.* 23 How. 209; *Packet Co.* v. *Atlee,* 2 Dill. 479; *Atlee* v. *Packet Co.* 21 Wall. 389. But where, although the origin of the wrong is on the water, the consummation and substance of the injury are on the land, the admiralty has no jurisdiction. In this case, the schooner which did the injury to Howell's property was on the water,—was afloat and engaged in navigation; but Howell's property was a part of the soil of the earth, or was affixed to it, and was wholly on land. In a case of tort there can be no jurisdiction in the admiralty unless the substantial cause of action arising out of the wrong was complete upon navigable waters."

In all the above cases the decision is made to turn, not upon the place where the negligence as the cause of the damage originates, but upon the place where the *injury* is received and consummated. It must appear that the *damage*, as the substantial cause of action arising out of the negligence, "is complete within the locality upon which the jurisdiction depends, namely, upon the high seas or navigable waters." *The Plymouth,* 3 Wall. 36. The canal-boats, in this case, were moored along-side the wharf for the purpose of discharging their cargoes, a work which is maritime and one of the necessary incidents of navigation, and the vessels were afloat upon navigable waters. The whole damage and injury were *received* by them in this situation; the *locus* of the *damage* was upon navigable waters. That was, therefore, the *locus* of the *tort;* and as that tort was upon the water, it was within the admiralty jurisdiction, and the libelants are, accordingly, entitled to decrees, with costs.