THE MARY GARRETT.

ANDERSON v. THE MARY GARRETT.

(District Court, N. D. California. October 29, 1894.)

No. 10,701.

1. ADMIRALTY—JURISDICTION—INJURY ON WHARF.
Admiralty has no jurisdiction of an action for injury to a person on a wharf, caused by negligence originating on a ship; and it makes no difference that the person was employed as a seaman on the ship.

2. SAME—WAGES.
The fact that libelant claims, as part of his damages for the tort, loss of his wages as seaman, does not aid the jurisdiction of admiralty.

Libel by Gust. Anderson against the steamboat Mary Garrett, her tackle, apparel, and furniture, for damages for personal injuries to a seaman employed on the vessel, sustained on a wharf by reason of the alleged negligence of the mate and owner of said vessel in unloading a portion of the cargo. Exceptions to the jurisdiction of the court. Exceptions sustained.

G. M. Spencer and John C. Hughes, for libelant.
Woods & Levinsky and W. G. Holmes, for claimant.

MORROW, District Judge.   The action in this case is in rem
against the steamboat Mary Garrett, and is brought to recover
damages for personal injuries sustained by libelant while in the em-
ployment of said vessel.   The case is now before the court upon
exceptions by claimant to the amended libel filed October 8, 1894.
The exceptions are directed to the jurisdiction of the court, it being
contended that it is sought, by the cause of action set out in the
amended libel, to recover damages for an injury sustained on a
wharf; or, in other words, that the damage was inflicted on land,
and not on water, and that, therefore, this court, as a court of ad-
mirality, has no jurisdiction.   It appears from the amended libel
that on June 9, 1893, the libelant entered into the service of the
claimant as a seaman on board of the Mary Garrett, then lying in
the port of San Francisco, and destined on a trip to the city of
Stockton, an inland port in the state of California; that the vessel
arrived on or about June 10, 1893, at the port of the city of Stockton,
with libelant on board; that at said last-named time the libelant
was injured by and through the negligence and carelessness of the
mate of the vessel in discharging a portion of the cargo of said ves-
sel.   The fifth article of the amended libel contains the averments
of fact which, it is claimed, are fatal to the jurisdiction of this court.
It is as follows:

"And the said libelant further alleges that by reason of the carelessness
and negligence of said libelee in receiving a portion of the cargo aforesaid,
from the consignors thereof, in an unsafe and dangerous condition for
shipment, in that a portion of said cargo aforesaid, consisting of a large
amount of sheet iron, was received by said libelee for shipment, loosely
placed, unbound, upon a wheeled vehicle, and carelessly and negligently
handled, by reason of the commands of the said mate, in that said wheeled
vehicle, on which said sheet iron lay loose and unbound, was, by the com-
mands of said mate, caused to be wheeled down a steep descent along the
gang plank from said vessel to the dock, at the time and place aforesaid,
while said gang plank was in a steeply inclined position, and by reason of
the carelessness and negligence of said libelee in not providing suitable and
safe machinery and appliances for the proper unloading of said portion of
said cargo, and by reason of the carelessness and negligence of said libelee
in not causing said portion of said cargo to be put in a safe and suitable
condition for being handled at said time and place aforesaid, said portion
of the cargo of said vessel was discharged upon and fell upon libelant, and
thereby said libelant received and suffered the injuries and damages herein-
before set forth."

It is also further averred in other articles that the injury was
due to the carelessness and negligence of the claimant, the California
Navigation & Improvement Company, in failing to provide suitable
machinery and appliances for the unloading of the cargo, and also
in making use of the wharf, knowing that it was in an unsafe and
dangerous condition.

While the language employed in the amended libel does not
clearly, and in so many words, state that libelant received the in-
jury on the wharf, yet the reasonable interpretation of the language
used in narrating the manner in which the injury was sustained is

hardly susceptible of a different conclusion. In fact, it was conceded at the argument that libelant was injured on the wharf. That a wharf is, figuratively speaking, regarded, in the admiralty, as land, and not as water, is well settled. It is deemed but an improvement or extension of the shore for commercial purposes. The Rock Island Bridge, 6 Wall. 213; The Ottawa, 1 Brown's Adm. 356, Fed. Cas. No. 10,616; The Empire State, 1 Newb. 541, Fed. Cas. No. 12,145; The Mary Stewart, 10 Fed. 137. The proposition is elementary in the admiralty law that the test of the jurisdiction of admiralty courts over torts is the locality of the injury. The question which is conclusive upon the jurisdiction of this court as a court of admiralty is, where was the injury sustained? On land or on water? If upon the land, then the admiralty cannot take cognizance of the tort; if upon the "water," this term comprehending in this country the high seas and the navigable waters, this court has exclusive original jurisdiction of an action in rem for damages. Henry, in his work on Admiralty Jurisdiction, etc., (page 68, § 26), thus states the general proposition:

"This jurisdiction, as far as it concerns torts, depends entirely upon the locality; but it must be committed on the water, and not on the land."

The authorities all affirm the same principle in unequivocal terms. The Plymouth, 3 Wall. 20; The Rock Island Bridge, 6 Wall. 213; The Neil Cochran, 1 Brown's Adm. 162, Fed. Cas. No. 10,087; The Ottawa, 1 Brown's Adm. 356, Fed. Cas. No. 10,616; The Mary Stewart, 10 Fed. 137; The Arkansas, 17 Fed. 383; The Professor Morse, 23 Fed. 803; The H. S. Pickands, 42 Fed. 239; The John C. Sweeney, 55 Fed. 540.

Nor does it make any difference whether the tort had its inception, its origin, upon water, if the consequential effects of the wrong, the consummation of the tort, happened on land. It is immaterial, so far as the admiralty jurisdiction is concerned, that the tort originated on water, if the injury happened on land. This was decided in the case of The Plymouth, 3 Wall. 20. In that case the steam propeller Falcon anchored beside the wharf of Hough & Kershaw, in Chicago river, which was a navigable stream. There were large packing houses on the wharf, filled, at the time, with valuable stores. Owing to the negligence of those in charge of the Falcon, the vessel took fire; and the flames spreading to the wharf and packing houses, these were wholly consumed, with the stores therein contained. Mr. Justice Nelson, who delivered the opinion of the court, said:

"It will be observed that the entire damage complained of by the libelants, as proceeding from the negligence of the master and crew, and for which the owners of the vessel are sought to be charged, occurred, not on the water, but on the land. The origin of the wrong was on the water, but the substance and consummation of the injury on land. It is admitted by all the authorities that the jurisdiction of the admiralty over marine torts depends upon locality,—the high seas, or other navigable waters within admiralty cognizance; and, being so dependent upon locality, the jurisdiction is limited to the sea or navigable waters, not extending beyond high-water mark. * * * Since the case of The Genesee Chief, 12 How. 443, navigable waters may be substituted for tide waters. This view of the jurisdiction

over maritime torts has not been denied. But it has been strongly argued that this is a mixed case, the tort having been committed partly on water and partly on land; and that, as the origin of the wrong was on the water, —in other words, as the wrong began on the water,—where the admiralty possesses jurisdiction, it should draw after it all the consequences resulting from the act."

After dwelling upon the fact that it is the locality of the injury that determines whether a court of admiralty has or has not jurisdiction, the learned justice proceeds:

"We can give, therefore, no particular weight or influence to the consideration that the injury in the present case originated from the negligence of the servants of the respondents on board of a vessel, except as evidence that it originated on navigable waters,—the Chicago river; and, as we have seen, the simple fact that it originated there, but, the whole damage done upon land, the cause of action not being complete on navigable waters, affords no ground for the exercise of the admiralty jurisdiction. The negligence, of itself, furnishes no cause of action; it is damnum absque injuria. The case is not distinguishable from that of a person standing on a vessel, or on any other support in the river, and sending a rocket or torpedo into the city, by means of which buildings were set on fire and destroyed. That would be a direct act of trespass, but quite as efficient a cause of damage as if the fire had proceeded from negligence. Could the admiralty take jurisdiction? We suppose the strongest advocate for this jurisdiction would hardly contend for it. Yet the origin of the trespass is upon navigable waters, which are within its cognizance. The answer is, as already given: The whole, or at least the substantial cause of action, arising out of the wrong, must be complete within the locality upon which the jurisdiction depends,—on the high seas or navigable waters. The learned counsel, who argued this case for the appellants with great care and research, admitted that it was one of first impression; that he could find no case in the books like it. The reason is apparent, for it is outside the acknowledged limit of admiralty cognizance over marine torts, among which it has sought to be classed."

The doctrine enunciated by this case has not since been limited or otherwise impaired; but, where the question has arisen, the doctrine has been unqualifiedly recognized as correct. The Neil Cochran, 1 Brown's Adm. 162, Fed. Cas. No. 10,087, and cases cited above. It is true that most of the cases cited against the jurisdiction of this court as a court of admiralty involved actions in rem against vessels for collisions with the land; that is, with wharves, piers, bridges, and, in one case, with a marine railway. The Neil Cochran was a case where a libel was filed against the schooner Neil Cochran for collision with a drawbridge. Held not a maritime tort. In The Ottawa, 1 Brown's Adm. 356, Fed. Cas. No. 10,616, a libel in rem was filed against the Ottawa for collision with a wharf. Held not a maritime tort. In The Arkansas, 17 Fed. 383, that vessel was libeled for an injury to a tank containing a large quantity of oil, by being floated and propelled against it. The tank was part of a depot for the reception and storage of oil upon the levee in the city of Keokuk, near the Mississippi river; but, by reason of an unusual and extraordinary flood of the river, the water extended to and around the said property, and the vessel, while being navigated, collided with it. It was held that an action in rem could not be maintained, said depot being a structure upon land, although the water was the means or agent by which the vessel was floated upon this land structure. In The Professor Morse, 23 Fed. 803, a libel in rem

was brought for an injury to a marine railway. Held not a maritime tort, the marine railway not being a floating structure. In The John C. Sweeney, 55 Fed. 540, a libel was filed against the vessel for colliding with a drawbridge. Held not a maritime tort. In the Rock Island Bridge Case, 6 Wall. 213, a maritime lien was claimed and sought to be enforced against a portion of the bridge known by the above name for alleged damages sustained by two steamboats in colliding with that part of the bridge. But the supreme court held (Mr. Justice Field delivering the opinion) that the bridge was, to all intents and purposes, part of the land, and that a maritime lien could not be impressed thereon. Although the facts of these cases cannot be said to be analogous to the case at bar, in that the injuries were done to the land, or what has been held to be tantamount to land, viz. wharves, piers, bridges, etc., while in the case at bar the injury was inflicted on land, though the cause of the injury arose on or proceeded from the vessel, nevertheless the principle invoked in all these cases, and repeatedly enunciated by the decisions, is common to the case at bar, viz. that it is the locality of the injury, not of the wrong, strictly speaking, which is the test of the jurisdiction of admiralty over torts; and it would seem, logically, that, if courts of admiralty have no jurisdiction over injuries by vessels to land, a fortiori they ought not to have jurisdiction over torts resulting in damage on land. In two cases the facts are quite analogous to those in the case at bar. In The Mary Stewart, 10 Fed. 137, it appeared that an injury was sustained by a man while he was standing on a wharf. He was injured by a bale of cotton which was being hoisted aboard the vessel loading at the wharf, but which fell before it reached the ship's rail, and struck him. It appeared that the rope which broke was part of the ship's tackle. The district judge (Judge Hughes, of the eastern district of Virginia) held that the admiralty had no jurisdiction over such a tort, nor could state statutes give it such jurisdiction. The learned judge said:

"It is clear that the cause of action set out in the libel is without the jurisdiction of the admiralty. In cases of tort the locality alone determines the admiralty jurisdiction. Only those torts are maritime which happen on navigable waters. If the injury complained of happened on land, it is not cognizable in the admiralty, even though it may have originated on the water. The Plymouth, 3 Wall. 20. This springs from the well-known principle that there are two essential ingredients to a cause of action, viz. a wrong, and damage resulting from that wrong. Both must concur. To constitute a maritime cause of action, therefore, not only the wrong must originate on water, but the damage—the other necessary ingredient—must also happen on water. Now, the injury in the case at bar happened on the land. Wharves and bridges are but improvements or extensions of the shore. They are fixed and immovable, and are a mere continuation and part of the real estate to which they are attached. And this is the case, whether they project over the water or not. Injuries to or on them, therefore, are not cognizable in the admiralty."

The other case is The H. S. Pickands, 42 Fed. 239, decided by Judge Brown, of the eastern district of Michigan. In that case the libelant was engaged in repairing a vessel which lay at a wharf, and he attempted to descend a ladder connecting the wharf with the bulwark of the vessel. The ladder had been secured against slipping

by a cleat at the bottom, which, by the negligent act of the master, had been removed. In descending the ladder, it slipped, and libelant was thrown upon the wharf, and injured. The learned judge used the following language:

"I am clear in my opinion that a court of admiralty has no jurisdiction of this case. It has never been doubted since the case of The Plymouth, 3 Wall. 20, that, to enable us to take cognizance of a maritime tort, the injury must have been consummated, and the damage received, upon the water. The mere fact that the wrongful act was done upon the ship is insufficient. Subsequent adjudications have in no wise tended to limit or qualify this rule."

On appeal to the circuit court the case was affirmed by Mr. Justice Brewer.

The fact that in the present case the libelant was a seaman, employed on the Mary Garrett, can, it seems to me, make no difference in the application of the principle involved, because the test of the jurisdiction of the court as a court of admiralty is not whether the injured party was or was not a seaman employed on a particular vessel from which the cause of injury is alleged to have emanated, but the test, and the only one, is as to the locality of the damage or injury. It is claimed, however, that in this particular case the court has jurisdiction over the tort, for the reason that the libelant is not only suing for damages, but also for loss of wages. It is to be observed in this connection that the action is brought primarily for damages suffered from the personal injury set out in the amended libel, and that the claim for wages is made incidentally, not as growing out of the contract of employment existing between the claimant and libelant, but as additional damages alleged to have resulted from the personal injury sustained. The libelant is therefore, in my opinion, in no better position. It follows that the exceptions to the jurisdiction of this court should be sustained, and the libel dismissed.