## HERMANN v. PORT BLAKELY MILL CO.

(District Court, N. D. California. September 13, 1895.)

No. 11,176.

1. ADMIRALTY JURISDICTION—TORTS COMMITTED PARTLY ON LAND AND PARTLY ON WATER.

Where a tort is committed partly on land and partly on water, the question whether admiralty has jurisdiction over it is determined by the locus of the damage, and not the locus of the origin of the tort. *Held*, therefore, that where the tort complained of was that a laborer working in the hold of a vessel was struck and injured by a piece of lumber, sent, without warning, down through a chute, by a person working on the pier, the case was one of admiralty jurisdiction.

2. MASTER AND SERVANT—NEGLIGENCE OF FELLOW SERVANT—PLEADING.

A libel in personam to recover damages for personal injuries, after describing defendant as a corporation, alleged that libelant was working in the hold of the vessel, and that "defendant" carelessly and negligently sent down upon him, through a chute, a piece of lumber, without giving notice of its coming, and that "defendant" was required to give notice, etc. *Held* that, although the acts of negligence ascribed to defendant must necessarily have been performed by some agent or employé, yet the court could not hold, on a demurrer to the libel, that such agent or employé was a fellow servant of libelant.

This was a libel in personam by Charles Hermann against the Port Blakely Mill Company, a corporation, to recover damages for personal injuries alleged to have been sustained while employed by defendant on the American vessel Kate Davenport. Defendant excepts to the libel.

H. W. Hutton, for libelant.

Van Ness & Redman, for defendant.

MORROW, District Judge. This is a libel in personam to recover damages for injuries alleged to have been sustained on board of the American ship Kate Davenport, while said vessel was being loaded with lumber at a wharf in Port Blakely, state of Washington. It appears from the allegations of the libel that the libelant was employed, in the month of January, 1895, in the capacity of mate on the Kate Davenport; that the vessel proceeded, with the libelant on board, to Port Blakely, there to load lumber; that on the 20th of January, 1895, while the vessel was lying at a wharf in said port, owned by the defendant, and was being loaded with lumber, the libelant was in the hold of the vessel, with several of the crew, engaged in receiving the lumber which was being loaded; that the manner of loading was to slide the lumber down a chute into the hold, and, as each piece was slid down, warning was given, to notify those in the hold, to enable them to escape from the descending lumber; that this warning was relied upon by the libelant in order to get out of the way of the lumber coming into the hold as aforesaid; that the defendant so carelessly, negligently, and improperly slid down a piece of lumber, without giving any warning or notification, to those in the hold, that the same was coming down the chute, that said piece of lumber struck the libelant, breaking his right leg, thereby seriously injuring him, to his damage in the sum of $10,000. Exceptions are filed to the libel

upon two grounds: (1) That the court has no jurisdiction of the tort alleged in the libel; (2) that, upon the face of the allegations of the libel, it appears that the wrong of which libelant complains was the act of a fellow servant in a common employment, for which the defendant is not, in law, liable.

Taking these exceptions up in their order, it was urged upon the argument that the court has no jurisdiction of the tort alleged, for the reason that it originated on land,—that is to say, on the wharf from which the lumber was being loaded,—and not on the water; that, to give a court of admiralty jurisdiction over torts, not only the injury must take place on water, but the whole tort, from its incipiency to its conclusion, must occur on the water; and that where the tort has its origin on land, although it is consummated, and the injury sustained, on water, a court of admiralty can have no jurisdiction of the wrong. "It has been uniformly held  *  *  * that the American admiralty has a general maritime jurisdiction, embracing all maritime causes of action, as well matters of contract as matters of tort; that in matters of tort the jurisdiction depends upon the locality, and embraces all damages and injuries upon the sea." Ben. Adm. § 261, p. 149 (2d Ed.). To the same effect are the following cases: The Plymouth, 3 Wall. 20; The Rock Island Bridge, 6 Wall. 213; The Neil Cochran, 1 Brown, Adm. 162, Fed. Cas. No. 10,087; The Ottawa, 1 Brown, Adm. 356, Fed. Cas. No. 10,616; The Mary Stewart, 10 Fed. 137; The Arkansas, 17 Fed. 383; The Professor Morse, 23 Fed. 803; The H. S. Pickands, 42 Fed. 239; The John C. Sweeney, 55 Fed. 540; The Mary Garrett, 63 Fed. 1009.

While this statement of the rule as found in the text-books and authorities is certain enough for all ordinary purposes of general admiralty jurisdiction, it is not sufficiently explicit in its application to a case like the present, where the tort is claimed to have occurred partly on land and partly on water. I have not been cited, nor have I been able to find, any case where precisely the same point as is here raised was involved. While there have been dicta in favor of the jurisdiction of the admiralty court, as claimed by the libelant in this case, the question has never come up squarely for decision, so far as I am advised. In The Plymouth, 3 Wall. 20, the origin of the wrong was on the water, but the substance and consummation on land. It was held that the admiralty courts of this country were without jurisdiction where the substance and consummation of the injury had happened on land, and the fact that the tort had originated on the water made no difference. Mr. Justice Nelson, in the course of his opinion, said:

"But it has been strongly argued that this is a mixed case (the tort having been committed partly on water and partly on land), and that, as the origin of the wrong was on the water (in other words, as the wrong began on the water), where the admiralty possesses jurisdiction, it should draw after it all the consequences resulting from the act. * * * Much stress has been given to the fact, by the learned counsel who would support the jurisdiction, in his argument, that the vessel which communicated the fire to the wharf and buildings was a maritime instrument or agent, and, hence, characterized the nature of the tort. In other words, that this characterized it as a maritime tort, and, of course, of admiralty cognizance. * * *"

After discussing the right of action, the learned justice thus concludes:

"We can give, therefore, no particular weight or influence to the considera-
tion that the injury in the present case originated from the negligence of the
servants of the respondents on board of a vessel, except as evidence that it
originated on navigable waters,—the Chicago river.  And, as we have seen,
the simple fact that it originated there, but the whole damage done upon
land,—the cause of action not being complete on navigable waters,—affords no
ground for the exercise of the admiralty jurisdiction.  The negligence, of
itself, furnishes no cause of action.  It is 'damnum absque injuria.'  The
case is not distinguishable from that of a person standing on a vessel, or on
any other support in the river, and sending a rocket or torpedo into the city,
by means of which buildings were set on fire and destroyed.  That would be
a direct act of trespass, but quite as efficient a cause of damage as if the fire
had proceeded from negligence.  Could the admiralty take jurisdiction?  We
suppose the strongest advocate for this jurisdiction would hardly contend for
it.  Yet the origin of the trespass is upon the navigable waters, which are
within its cognizance."

Applying this reasoning to the case at bar,—although the facts
alleged in the libel present a counter proposition to that involved
in The Plymouth, in this, that in the latter case the origin of the
tort was on water, while in the case at bar it is alleged to have
been on land,—it would seem to be strong argument in favor of
the jurisdiction of the court.  For, if it is the locality where the
substance and consummation of the tort happened which is the ulti-
mate test of admiralty jurisdiction, and not the origin, the case at
bar clearly comes within the rule.  What the learned justice says,
in the concluding sentence of the paragraph just quoted, about the
cause of action not being "complete on navigable waters," has refer-
ence, plainly, from a reading of the whole opinion, to the "substance
and consummation of the tort"; that is to say, the locality where
the injury is inflicted, and the damage sustained.  This latter must
be upon the high seas, or the navigable waters, in order to be within
the admiralty jurisdiction.

The Maud Webster, 8 Ben. 547,[1] was a case where a libel in rem
had been filed against the schooner for injuries sustained to a der-
rick and other articles belonging to the libelant by reason of a col-
lision between the schooner and the derrick.  The derrick was being
used to construct a pier for a lighthouse to be erected at the Middle
Ground, Stratford Shoals, in Long Island Sound, a place entirely
surrounded by water.  A cross libel was filed by the owners of the
schooner against the owner of the derrick.  The court entertained
jurisdiction of the cross libel, as being for an injury to a vessel
afloat, but dismissed it on its merits, holding that there was no
fault on the part of the owner of the derrick.  But it declined to
take jurisdiction of the libel in rem of the owner of the derrick,
on the ground that, although the origin of the wrong was on the
water, yet the consummation and substance of the injury was on
the land.  The learned judge said:

"In this case, the schooner which did the injury to Howell's property was
on the water, was afloat and engaged in navigation; but Howell's property
was a part of the soil of the earth, or was affixed to it, and was wholly on
land.  In a case of tort, there can be no jurisdiction in the admiralty unless

_____
1 Fed. Cas. No. 9,302.

the substantial cause of action, arising out of the wrong, was complete upon navigable waters."

In commenting on the case of The Ottawa, 1 Brown, Adm. 356, Fed. Cas. No. 10,616, as authority for his decision, Judge Blatchford says, further:

"Although the criterion of admiralty jurisdiction in cases of tort is locality, yet, as was correctly remarked in that case, the place or locality of the injury is the place or locality of the thing injured, and not of the agent by which the injury is done."

In Leonard v. Decker, 22 Fed. 741, it appeared that two canal boats had been damaged while moored to a pier. The pier was somewhat out of repair, by reason of some piles or fenders having been torn away, leaving the bolts which had secured them exposed, and projecting outward and beyond the side of the pier. The bolts were under water, except when the tide was low. The canal boats were injured by mooring alongside the concealed bolts, without notice of the obstructions, or of the danger from them. Judge Brown said:

"Counsel for respondents has submitted an elaborate argument against the jurisdiction of the district court in this case, on the ground that the tort is not a maritime one, since the bolts that did the injury were attached to the pier, and belonged to the land, and not to the water. Among the cases cited are the well-known cases supporting the counter proposition that injuries done by vessels to wharves, or objects upon wharves, bridges, etc., are not maritime torts, and hence not within the jurisdiction of the district court. The Plymouth, 3 Wall. 20; The Neil Cochran, 1 Brown, Adm. 162 [Fed. Cas. No. 10,087]; The Ottawa, 1 Brown, Adm. 356 [Fed. Cas. No. 10,616]; The Maud Webster, 8 Ben. 547 [Fed. Cas. No. 9,302]. Without entering at length into a discussion of these and other cases cited, which I have carefully examined, I need only say that they do not seem to me to sustain the contention of the respondents, but, on the other hand, to be entirely consistent with, and to recognize, the jurisdiction of this court over torts like the present, and that upon two distinct grounds: First, that the bolts which caused the injuries were an obstruction to navigation; and, second, because the damage done was inflicted upon a vessel afloat, and because the place where the injury is consummated, and the damage actually received, is regarded as the locus of the tort."

After quoting from the case of The Maud Webster, supra, the learned judge continues:

"In all the above cases the decision is made to turn, not upon the place where the negligence, as the cause of the damage, originates, but upon the place where the injury is received and consummated. It must appear that the damage, as the substantial cause of action arising out of the negligence, 'is complete within the locality upon which the jurisdiction depends, namely, upon the high seas or navigable waters.' The Plymouth, 3 Wall. 36. The canal boats, in this case, were moored alongside the wharf, for the purpose of discharging their cargoes, a work which is maritime, and one of the necessary incidents of navigation, and the vessels were afloat upon navigable waters. The whole damage and injury were received by them in this situation. The locus of the damage was upon navigable waters. That was, therefore, the locus of the tort; and, as that tort was upon the water, it was within the admiralty jurisdiction."

This case differs from the case at bar in that the injury there sustained not only originated on the land, but was done by the land itself, the pier being deemed an extension or continuation of the shore; but it is clear authority for the proposition that it is the

locus of the damage, and not the locus of the origin of the tort, which is the real test of admiralty jurisdiction over torts.

In the case of City of Milwaukee v. The Curtis, The Camden, and The Welcome, 37 Fed. 705, a libel in rem was filed by the city of Milwaukee against the vessels named, for injuries to a bridge. The libel was dismissed for want of jurisdiction. The proposition involved there was counter to that in the case at bar. It was for an injury to land, and not for an injury originating on land. Nevertheless, the remarks of Judge Jenkins as to the locality of the damage being conclusive of the question of admiralty jurisdiction are in point. He says:

"In cases of tort, locality is the test of jurisdiction in the admiralty. The ultimate judicial authority has determined the principle that the true meaning of the rule of locality is that, although the origin of the wrong is on water, yet, if the consummation and substance of the injury are on the land, a court of admiralty has not jurisdiction; that the place or locality of the injury is the place or locality of the thing injured, and not of the agent causing the injury. Ex parte Phenix Ins. Co., 118 U. S. 610, 7 Sup. Ct. 25. Within this settled principle, a tort is maritime, and within the jurisdiction of the admiralty, when the injury is to a vessel afloat, although the negligence causing the injury originated on land. The Rock Island Bridge, 6 Wall. 213; Leonard v. Decker, 22 Fed. 741. In the former case it was ruled that an action in personam would lie against the owners of the bridge, because the injury was consummate upon navigable waters, being inflicted upon a movable thing engaged in navigation, but that a proceeding in rem against the bridge was not maintainable, because a maritime lien can only exist upon movable things engaged in navigation, or upon things which are the subjects of commerce on the high seas or navigable waters. And so an injury happening, through default of the master, to one upon a vessel discharging cargo at a wharf to which she was securely moored, is within the admiralty jurisdiction (Leathers v. Blessing, 105 U. S. 626), but otherwise if the injury occurred to one upon the wharf (The Mary Stewart, 10 Fed. 137). In the latter case there is an inadvertent remark to the effect that both the wrong and the injury must occur upon the water,—a proposition not sustained by authority. It suffices if the damage —the substantial cause of action arising out of the wrong —is complete upon navigable waters. The Plymouth, supra."

Counsel for respondent relies greatly upon The Mary Stewart, supra, and particularly upon the remarks criticised by Judge Jenkins in the case just quoted, as indicating that the tort must be complete on the water before a court of admiralty will take jurisdiction. That was a case involving the proposition counter to the one in the case at bar, viz. the tort there originated on the water, but the consummation and the injury were sustained on land. The facts of the case were, briefly, that one, an employé of the stevedore engaged in loading the vessel, was injured, while standing on the wharf, by a bale of cotton, which was being hoisted aboard the ship, but which fell before it reached the ship's rail. It was contended that a court of admiralty could not take jurisdiction. The district judge correctly held that jurisdiction could not attach, but, in sustaining this contention, went a little further than the facts justified him. He said:

"It is clear that the cause of action set out in the libel is without the jurisdiction of the admiralty. In cases of tort, the locality alone determines the admiralty jurisdiction. Only those torts are maritime which happen on navigable waters. If the injury complained of happened on land, it is not cognizable in the admiralty, even though it may have originated on the water.

The Plymouth, 3 Wall. 20. This springs from the well-known principle that there are two essential ingredients to a cause of action, viz. a wrong, and damage resulting from that wrong. Both must concur. To constitute a maritime cause of action, therefore, not only the wrong must originate on water, but the damage—the other necessary ingredient—must also happen on water. Now, the injury in the case at bar happened on the land."

This language must, of course, be taken subject to the facts of that case, and to the question of law which the learned judge was then considering. I do not think that he meant to lay it down as a general principle that "the wrong must originate on the water," for that would be to make the test of admiralty jurisdiction depend upon the locality where the tort originated,—a proposition not countenanced by a single authority or dictum. I think that the only true and rational solution of the jurisdictional question, where the tort occurs partly on land and partly on water, is to ascertain the place of the consummation and substance of the injury. This latter element of the wrong is necessarily the only substantial cause of action, otherwise it would be "damnum absque injuria."

With reference to other cases cited by counsel for respondent, they may be disposed of with the statement that, discarding scattered and isolated expressions, and reading the opinions cited as a whole, they rather make for than against the jurisdiction of admiralty. While, as previously stated, I have been unable to find any case on "all fours" with the one at bar, yet there are many authorities upon the counter proposition—viz. where the tort has its origin on water, but is consummated, and the injury sustained, on land—which seem to me to furnish convincing authority for the jurisdiction of the court in this case. In those cases, where the facts showed that the tort originated on water, but was consummated, and the injury sustained, on land, it is held that courts of admiralty have no jurisdiction. The authorities even go further, and hold that where the tort originates on water, and results in injury to land, as wharves, piers, bridges, etc. (e. g. a vessel colliding with a wharf, etc.), libels for damages sustained by such wharves, etc., will not be entertained in admiralty, because the injury took place, to all intents and purposes, on land, and not on water, and the fact that the agent causing the injury was afloat made no difference. The Plymouth, supra; The Neil Cochran, supra; The Ottawa, supra; The Arkansas, 17 Fed. 383; The Professor Morse, 23 Fed. 803; The John C. Sweeney, 55 Fed. 540; The Mary Stewart, supra; The H. S. Pickands, 42 Fed. 239; The Mary Garrett, 63 Fed. 1009; The Rock Island Bridge, 6 Wall. 213. But it is held, on the other hand, that if a vessel sustain injury by colliding with wharves, piers, etc., they may maintain an action in personam against the owners thereof, the damage having been sustained on water. Greenwood v. Town of Westport, 53 Fed. 824; Id., 60 Fed. 561; Hill v. Board, 45 Fed. 260. The central idea found running through all these cases is, so far as jurisdiction over torts is concerned, that the admiralty law looks to the place where the injury was suffered, and not to the locality of the agent causing the injury. If this be the correct doctrine with respect to cases where the tort originates on water, but results in damage to land or on land, I see no valid reason why the same test of jurisdiction is not applicable to cases

where the tort originates on land, but results in damage on the water. Applying this criterion to the case at bar, it will be readily conceded to be conclusive in favor of the question of jurisdiction.

The second exception interposed is that it appears from the allegations of the libel that the wrong of which libelant complains was the act of a fellow servant, for which the respondent is not, in law, liable. The allegations to which this exception is directed are:

"That, in passing the same or said lumber on board of the said vessel, it was slid down a chute into her hold, and, as each piece was so slid down the said chute, warning was required, to notify those in the said vessel's hold, to enable them to escape from the said lumber as it slid down the said chute; and warning was given by the said defendant, and relied upon by the said libelant, for all of said lumber received down the said chute, up to the sliding of one piece, to wit, a large piece of lumber which the said defendant carelessly, negligently, and improperly slid down the said chute without any warning or notification that the same was coming or sliding down the said chute; and, the said defendant so allowing the said piece of lumber to slide down the said chute, the libelant, having no knowledge that the same was coming, was unable to avoid it, and, in consequence thereof, the said piece of lumber struck libelant's right leg, and broke the same, etc."

The "defendant" is described in the libel as the Port Blakely Mill Company, organized and existing under and by virtue of the laws of the state of California. Being a corporation, it must necessarily act by and through its agents and servants. The company itself is not a fellow servant. When the libel mentions the "defendant," it means, obviously, an employé of the defendant. But who this person was, or what occupation he was engaged in, or what relation he bore to the company and to the libelant, is not disclosed by the averments of the libel. It is plain, therefore, that the court cannot, on the present exception, determine affirmatively that the libelant was injured by the carelessness or negligence of a fellow servant. The final disposition of this question must wait until the court has become more fully advised in the premises. The exceptions are therefore overruled.