MASON and others *v.* PEWABIC MIN. CO. and others.

*(Circuit Court, W. D. Michigan, N. D.* December 28, 1885.)

1. CORPORATION — DISSOLUTION — ORGANIZATION OF NEW COMPANY — SALE BY DIRECTORS OF PROPERTY TO NEW COMPANY.

   A corporation having expired by limitation, the directors, under the Michigan statute authorizing such corporation to continue for three years as a corporation simply for the purpose of suing and being sued, and to wind up its affairs, cannot organize a new corporation, and, with the consent of a majority of the stockholders of the old corporation, sell the property thereof to the new corporation at a valuation fixed by themselves, and compel the other stockholders in the old corporation to receive shares of stock in the new corporation, or their *pro rata* shares in money, based on such valuation.

2. SAME—RIGHTS OF MINORITY OF STOCKHOLDERS.

   In such a case, the minority of the stockholders will be entitled to an injunction to prevent the intended sale, and to a decree directing the sale of the property for cash to the highest bidder, proceeds of the sale to be applied to the payment of corporate debts and a *pro rata* distribution among the shareholders, with the proviso that, if no bid exceeds the valuation fixed by the directors, the arrangement sanctioned by the majority be carried out, and the property conveyed to the new company

In Equity.

MATTHEWS, Justice. The Pewabic Mining Company was organized as a corporation for mining copper and other ores, under the laws of Michigan, on April 4, 1853, for 30 years, with a capital stock ultimately of 40,000 shares of $25 each, invested in a copper mine near Houghton. The complainants are owners of 2,650 shares of the stock out of the whole amount, all of which has been issued. Although the period for which the company was incorporated expired on April 4, 1883, the directors elected in March of that year, in apparent ignorance of the fact, continued its ordinary business. On March

26, 1884, the regular annual meeting of the stockholders for the election of directors, and for other purposes, was held pursuant to notice duly given, at which the following resolutions were adopted, against the vote and protest of the complainants:

"Resolved, that the board of directors be authorized to sell and dispose of the property of the company for a sum not less than $50,000; that the president and secretary be authorized to execute all conveyances necessary to carry out the contract for the sale of the property of this company made by the board of directors, and that the board of directors be and hereby are authorized to close up the business of the company.

"Resolved, that it is the sense of this meeting of stockholders that the property of this company shall be sold to a new corporation, organized under the laws of Michigan, on the basis of forty thousand shares; and that the stock of such new corporation shall be issued to and received by the stockholders of this company in payment for the same, stockholders to have the right to receive equal numbers of shares in new company if they so elect, on surrendering certificates of this company within thirty days after April 12, 1884; and, in case stockholder does not take stock of new corporation, he is to receive his *pro rata* share in money."

The vote in favor of the adoption of these resolutions was 27,919 shares against 6,754 shares in the negative. On the same day, March 26, 1884, a certificate of incorporation was executed under the laws of Michigan to form "The Pewabic Copper Company," and filed March 28th. Its capital stock—40,000 shares of $25 each—was taken up by three corporators, who, with two others, were named as the first directors, being the same as those who controlled the old company; and the third article of association declared that "no cash is actually paid in on the capital stock. The cash value of the real and personal property conveyed to the company contemporaneously with its organization is the sum of fifty thousand dollars."

It was provided by a statute of Michigan (1 How. St. 1244, § 4867) that—

"All corporations whose charters shall expire by their own limitation, or shall be annulled by forfeiture or otherwise, shall nevertheless continue to be bodies corporate for the term of three years after the time when they would have been so dissolved, for the purpose of prosecuting and defending suits by or against them, and of enabling them gradually to settle and close their concerns, to dispose of and convey their property, and to divide their capital stock; but not for the purpose of continuing the business for which such corporations have been or may be established."

The present bill was filed March 31, 1884, its main object being to prevent by injunction the proposed sale of the property of the Pewabic Mining Company to the Pewabic Copper Company, and to have the same sold, under the orders of the court, at public auction, to the highest bidder for cash, and the proceeds, after payment of the debts of the corporation, divided ratably among the stockholders. It also prays as against the officers and directors of the company an account of all moneys received by them since April 4, 1883, including assessments on stock alleged to have been made and paid, and which it is averred were illegally used in the prosecution of the business of the

corporation after its dissolution, and at a loss. The general grounds of the relief prayed for are that the transactions complained of are illegal for want of power on the part of the defendants to undertake them, and on the further ground that they are fraudulent as against the complainants,—particularly that the price fixed upon the property of the company as the consideration of its sale and conveyance is grossly inadequate. The answer insists upon the lawfulness of the proceedings questioned, and that the proposed sale and conveyance of the corporate property to the new company is in good faith, for its fair value, and is the best mode of disposing of it for the benefit of the stockholders, and denies all fraud charged.

Under the statute quoted above the Pewabic Mining Company continued to be a body corporate after April 4, 1883, notwithstanding the expiration of the time limited in its charter for the prosecution of its business for the purpose of winding up its affairs. For this purpose it continued to exist as a corporation, and could do all necessary corporate acts suitable to that end. And it retained its corporate organization, acting through directors and officers, elected and appointed as had been customary, and its stockholders continued to be such, with all their rights and powers. The directors in office at the time when the corporation was dissolved as to future business did not cease to be such, and become statutory trustees for winding up, nor were the stockholders converted into *cestuis que trustent* merely of the assets of the company. The existence of the company as a corporation was prolonged for three years, in order that it might as a corporate body do the acts and things authorized by the statute, to the end that it might gradually settle and close its concerns by disposing of and conveying its property, and dividing its capital stock. Nevertheless, the corporation itself, and the directors officially, for the purposes of the statute, were trustees for the creditors and stockholders, and were bound to exert all their powers in the disposition of the property for the equal benefit of those equally entitled.

It is a matter of much doubt, as it appears to me, whether, in view of the language and purposes of the act, as against a dissenting stockholder, the corporation and its directors have a discretion to sell the property of the company in liquidation otherwise than for cash; but, without denying the power, it is very clear that they have no right to reorganize the company and its business by the formation of a new corporation, to which its property is conveyed in exchange for its stock, so as to compel dissenting stockholders to continue in the business which the statute has declared shall be wound up. And, as they have no power to compel all the stockholders to accept interests in the new enterprise in exchange for their shares in the old, neither can they impose arbitrary and unfair terms and conditions upon them for refusing to do so. This is the feature in the proposed plan of transferring the assets of the Pewabic Mining Company to the Pewabic Copper Company which presents to my mind the insuperable

objection to its confirmation. The complainants are required to receive shares in the new company in exchange for those they hold in the old, or, in the alternative, accept their proportion of $50,000 as the value of the whole. This sum was arbitrarily fixed by the directors and majority of the stockholders, who were to take the property at that sum. It made no difference to them what nominal valuation was adopted, as their relative interests were not changed. But the valuation was adopted, not with reference to a sale of the property to others, but to themselves, and is therefore no fair criterion for estimating the value of the shares of those whom they sought to compel, if they parted with their interests, to do so only to their former associates.

It is true that the defendants in their answer state that the sum named was a fair equivalent for the whole capital stock, at its market value; but that may not have been a fair value for the property which that capital stock represented. It is impossible for me, in deciding upon this point, to ignore the finding of the special master appointed for the very purpose of inquiring into the question of value, and who reports, upon the testimony taken, that, in his opinion, the property to be sold is worth nearly $500,000. And the complainants themselves offer in their bill to bid $75,000 for it.

Whatever power, therefore, the company by its directors and a majority of its stockholders may be supposed to have under the statute to sell the corporate assets for the purpose of liquidation, the proposed conveyance to the Pewabic Copper Company. in consideration of its assumption of the debts of the Pewabic Mining Company, which the answer alleges to be part of the understanding, and the exchange of the stock of the former for that of the latter, with the obligation of dissentients to accept their proportion of $50,000 as the estimated cash value of the whole, cannot be regarded as a sale at all, for purposes of liquidation. Its effect is simply to exclude the minority from all further interest in the property by compelling them, without their consent, to part with their interests at the price fixed by those to whom they are to be transferred, and that price, as it is now made to appear, far below the fair value of the property. The equity of the case I find, therefore, to be with the complainants to have the property of the Pewabic Mining Company sold for cash to the highest bidder under a decree of this court, the proceeds of sale to be applied to the payment of its debts, and the remainder to be distributed *pro rata* among the stockholders.

It is possible, however, that the property, when offered, may not bring more that $50,000 in addition to the debts, the amount of which, I believe, appears from statements on file. If no higher bid is made, there is no reason why the arrangement sanctioned by the majority of the stockholders and proposed by the company should not be carried out. To that end, the decree should provide that unless, when offered for sale, there should not be a bid in excess of $50,000 above

the amount of the debts, the arrangement referred to may be executed under the direction of the special master appointed to conduct the sale.

A decree may be prepared accordingly.