MASON et al. v. PEWABIC MIN. CO. et al.

(Circuit Court, W. D. Michigan, N. D. February 28, 1900.)

SPECIAL MASTER—MOTION FOR DISMISSAL—EVIDENCE CONSIDERED.

On a hearing before a special master, certain officers of the defendant company, who were also defendants, were allowed by the master to take away its books, on an agreement to return them before a date to which the hearing was adjourned. On such date the books had not been returned, and, at the request of counsel for plaintiff, the master made a certificate showing the conduct of defendants in obtaining the books under false promises, and in failing to return them. Within two or three days the books were returned, the hearing proceeded, and a month later the master made a report. He had filed such certificate, with a partial report, which he subsequently withdrew, but incorporated the certificate in his final report. Although the statement in such certificate, as to the failure of defendants to return the books, was true when the certificate was made, it was not true when read as of the date when the report was filed, but it was shown that there was no intentional attempt to mislead the court in that respect, and that it was advised of the facts before it passed upon the report. *Held*, that such facts did not establish bad faith or malice on the part of the master, which afforded ground for his removal, on a motion not made until eight years thereafter.

On Motion to Dismiss Peter White, Special Master.

Don M. Dickinson, for complainants.
Ashley Pond, for Peter White, special master.
Henry G. Stone, for Franklin Min. Co.

TAFT, Circuit Judge. This litigation has been in the circuit court for the Western district of Michigan, in the supreme court, and in the court of appeals for the Sixth circuit since 1883. 25 Fed. 882; 10 Sup. Ct. 224; 12 Sup. Ct. 887; 13 C. C. A. 532, 66 Fed. 391. It was begun by bill filed by the minority stockholders in a copper-mining company of Michigan, whose corporate life had expired by charter and constitutional limitation, to compel a sale of the assets of the company and a division of them between the stockholders. The then majority stockholders had devised a plan by which the assets should be transferred to a new company organized to continue the business, and the bill was filed to defeat the plan, and to compel a sale and distribution. The directors of the company who had devised the plan mentioned resisted the bill on behalf of the company, and were made parties to the proceedings, and, by subsequent order made in the case, were required to account for the assets coming into their hands. Mr. Justice Mathews appointed Peter White, of Marquette, to act as special master, to sell the mine and other assets, to take charge of all the books and papers of the company, and to take an accounting

against the directors. Thomas Perkins was president, and Daniel L. Demmon was treasurer, of the company, and lived in Boston, where much of the stock was held. Demmon and other directors of the Pewabic Company were also directors in the Franklin Mining Company, which owned mining property immediately adjacent to that of the Pewabic Company. The Franklin Company filed a claim for $30,000 alleged to have been loaned by the Franklin Company to the Pewabic Company after the latter's corporate existence had ended. The validity of the Franklin Mining Company's claim was also referred to Peter White, the special master, to take an accounting as between the two companies, for the purpose of determining whether the amount claimed was in fact due. The special master reported that the claim had not been established, and the circuit court confirmed the report. On appeal the case was carried to the court of appeals, and that court concluding that the hearing had not been sufficiently broad, and that the transactions between the two companies had not been sufficiently probed, remanded the cause for a rehearing, with directions that a full accounting be taken of the transactions between the two companies, and upon motion of the Franklin Mining Company the cause was referred to Peter White, special master, to state the account between the two companies. The order was accordingly made, and in the hearing before the master it was claimed that the court had jurisdiction, not only to determine that the claim of the Franklin Mining Company was not sustained, but also in stating the account to find, as the fact was claimed to be, that the Franklin Mining Company was indebted to the Pewabic Mining Company in a large sum. This claim the master has sustained, and has now made a report finding more than $200,000 to be due from the Franklin Mining Company to the Pewabic Mining Company. Judge Severens, sitting in the circuit court, has held that it is within the jurisdiction of the master and the court in stating the account to find a decree in favor of the Pewabic Company against the Franklin Company. Judge Severens did not, however, pass upon the merits of the finding of the master as to the amount due. Meantime a motion to remove the master on the ground that he has acted in bad faith in making certain findings against the Franklin Mining Company is also presented for hearing. I propose now to dispose only of the motion to remove the master.

The gravamen of the charge against the master is that he deliberately misrepresented in his report the conduct of the defendants in not producing the books within their custody; that he gave the court to understand that after producing the books they had withdrawn them upon a promise to return them at a certain time ready for the hearing, and that they had failed to return them for more than a month after the hearing; that he thereby prejudiced the court against the defendants, and led the court to conclude that no evidence produced by the defendants was worthy of credit, in view of their contumacious and fraudulent conduct in the hearing of the cause before the master. The facts were that, under the order made in pursuance of the mandate of the supreme court, the master went to Boston, and demanded the production of the books of the Pewabic Com-

·pany which were there in the custody of the treasurer, Daniel L. Demmon, and that Demmon refused to produce the books in June, 1890; that later on in July the books were produced in Michigan to the master, and, before adjournment of the hearing, Demmon obtained the books again upon the promise that he would return the same after making a statement from them in time for the hearing fixed for the 20th of August; that he would return them so that they should reach the master upon the 18th of that month. In order to do this, the books should have been expressed from Boston on the 16th. There was delay until the 18th, due, as it is said, to the absence of Perkins, the president of the company, from Boston, whose signature it was thought necessary to append to the statement. The books were sent off the night of the 18th, but did not reach the master until the 23d, having been forwarded to the counsel of the defendants resident in Michigan. The colloquy which took place at the time of the hearing, on the 20th of August, showed that the counsel for the defendants felt greatly embarrassed at the failure of his clients to produce the books, and stated the excuses which had been furnished him with much reluctance, and with evident irritation at being placed in the false position. Counsel for the complainants demanded that there should be a certificate by the master of the court showing the conduct of the defendants in obtaining the books under false promises and in withholding them. The certificate was immediately prepared, and allowed by the master, and was filed in a partial report by him on the 26th of August. Meantime the books had come. The partial report was withdrawn, and upon the 18th of September a full report was filed upon the subject of the debts due from the Pewabic Company and the wisdom of an immediate sale of the mine. This report also contained a statement of the proceedings of the master with reference to the accounting. The master incorporated in the report of the 18th of September the certificate which he had made on the 22d of August, before the books were received. Filed, as it was, as of the date of September 18th, and considered as of that date, it was not true with reference to the return of the books. In a subsequent opinion by Judge Severens, passing on the question of the accounting by the directors, the judge comments freely on the report of the master with respect to the conduct of the defendants in obtaining the books under a false promise, and withholding them, and gives this as one of the reasons why he discredits the evidence of Demmon and the other defendants, who were responsible for fraudulent obstruction of the master's proceedings. In the present report of the master he discredits a large part of the defendants' evidence, and quotes the language of Judge Severens in the opinion referred to, justifying his conclusions. It is not now necessary for me to pass in any way upon the correctness of the master's conclusions as to the credibility of the evidence adduced by the defendants upon the present issues. The only subject of inquiry upon this motion is whether the master has acted in bad faith in making his reports. It is made very clear by the evidence, not only of the master, but of reputable members of the bar engaged in the cause, that the words of the report of September 18, 1890, were written at a time when they were true, but that the

master, by mistake and in the hurry of making a report, embodied them in the report of the 18th of September, after the books had been returned. The evidence all tends to show, further, that the fact that the books were returned within a short time after the hearing was brought to the attention of Judge Severens within two years after the event, and before he passed on the report of the master upon the state of the account between the company and the directors. The inaccuracy of the report of September 18, 1890, has never been made a subject of complaint upon the record from that time until the filing of the present motion, about eight years later. That circumstance of itself convinces me that neither the counsel nor the parties at that time deemed the error of the master now complained of to be fraudulent or malicious. The fact which the record sufficiently discloses is that the defendant directors, especially Demmon, under the fatuous advice of obstinate counsel, have resented deeply the orders and decrees of all the courts in this matter, and have most reluctantly complied with the orders requiring them to produce the books of the Pewabic Company. Counsel has seen fit to advise the defendants to decline to answer questions, the relevancy of which counsel doubted or denied, though the master, with full power so to do, found the questions to be relevant. The delay in the production of the books on the 20th of August, while possibly not fraudulent, was manifestly due to the indisposition of the defendants promptly to comply with the orders of the master. At that time they were willing to delay a sale, and the failure to produce the books promptly at the time set for hearing would assist in effecting this result. It was this circumstance which induced the master to attribute the delay to something other than accident, and I am not prepared to say that his conclusion was not justified. At any rate, that he drew such an inference from the delay does not in any way impeach his good faith in making the severe strictures which he did make. The master, Mr. Peter White, is a gentleman of the highest reputation in Northern Michigan, a resident of that state and region for 50 years, of spotless integrity, and of the widest business experience. He is at the head of many large business enterprises, and his fellow citizens have intrusted to him many important public duties. It is inconceivable that such a man would deliberately make a false statement in an official report as special master concerning the conduct of the parties before him, when he would not have the slightest motive for so doing, and when the falsity of the statement could have been indubitably established at once. The conduct of the defendants has been most trying to the master in their failure to recognize that the best and safest course for them to pursue has been to make a complete disclosure of all the evidence within their control. Moreover, the master has occupied a somewhat embarrassing position. Without in the slightest degree criticising the previous orders made in this case, I may be permitted to suggest that the union in the special master of the duties of the receiver and of a judicial officer has not proven to be fortunate, because it has required the special master, as a judge, to pass upon disputed questions of fact, some of which were necessarily within his personal cognizance when acting in his capacity as an executive hand

of the court. The amount and extent of the property which he was obliged to take possession of in order to make the sale is one of the most hotly-contested questions in the case. The record shows that counsel for the complainants has deemed it his duty to call the master as a witness as to certain facts, and thus to invoke his judicial action upon his own evidence. That he has reached his conclusions with the utmost good faith I cannot have the slightest doubt, but the double part which he has perforce been obliged to play has intensified the bitterness and resentment of the defendants against him, and has led to this unusual action on their part. I am glad to be able to find that there is not the slightest evidence of any bad faith on the part of the master, and to deny this motion, at the costs of the defendants.